IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**STEVEN L. ROMANSKY,**                      :
:
**Petitioner**                :          **CIVIL NO. 1:CV-09-01472**
:
**v.**                                  :          **(Judge Rambo)**
:
**LOUIS S. FOLINO,** *et al.*,                :
:
**Respondents**                :

**M E M O R A N D U M**

Presently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended on April 15, 2016, filed by Petitioner Steven Romansky, a state inmate currently incarcerated at the State Correctional Institution at Greene, in Waynesburg, Pennsylvania.  (Doc. 63.)  In the petition, Petitioner challenges his 1987 and 2000 convictions and sentences in the Court of Common Pleas in Pike County, Pennsylvania ("trial court" or "Pike County court").  For the reasons that follow, the habeas petition will be denied.

I.     **Background**

The underlying facts relating to Petitioner's convictions are as follows, as summarized in the Grand Jury Presentment related to his case:

> Pursuant to the submission of Notice No. 7, this Investigating Grand Jury began hearing evidence relative to stolen motor vehicles and insurance fraud throughout Pennsylvania.  Through education, experience, informant information and eye witness statements, the Office of Attorney General, Bureau of Criminal Investigation (OAG/BCI) and

the Pennsylvania State Police (PSP) have learned that groups of individuals have been working together as an enterprise and engaging in racketeering activities to steal and dispose of various types of motor vehicles.  This specific investigation has revealed that a group of individuals is operating in the northeastern part of Pennsylvania, New York and New Jersey.  They have been obtaining wrecked or other low cost vehicles in order to acquire vehicle identification number (VIN) plates and titles.  They would attach these VIN plates to the fraudulently obtained vehicles and, to the extent necessary, would alter or deface other identification numbers located on the vehicle frames so as to avoid any trace of the original vehicle.  These individuals were also engaged in stealing various motor vehicles and dismantling them in order to sell the part[s] or to reassemble other vehicles.

* * *

Special Agent [Russell] Thomas [of the Office of Attorney General] received information that [Petitioner] had possession of a stolen green and white Ford Bronco.  After checking official Pennsylvania Department of Transportation records, it was determined that the purported 1979 Ford 4-wheel drive Bronco (vehicle number 27) was using a VIN for a 1974 Ford Pinto wagon.  The title records revealed that [Petitioner] had been issued a special state replacement vehicle identification number plate for this vehicle based upon title work submitted to the department.  Pennsylvania State Police troopers observed this vehicle which obviously appeared to be a Bronco rather than a Pinto station wagon.  Based upon this information, a search warrant was obtained and the vehicle was seized at [Petitioner]'s residence on August 28, 1984 in Sterling, Pike County, Pennsylvania.  An examination revealed that this Ford Bronco was reported stolen January 7, 1981 in Mount Pocono, Monroe County, Pennsylvania.  Further investigation revealed that the Pinto VIN came from a vehicle given to Thomas Smithers, former owner of the Happy Hooker garage, Mount Pocono, Monroe County, Pennsylvania.  Thomas Smithers is a part-time police officer in Mount Pocono, Barrett Township, Monroe County, Pennsylvania.  Records show that this vehicle had been

2

inspected at Smithers' garage when the Pinto VIN was on the Bronco. Furthermore, the investigators learned through other investigation that Smithers suspected that the vehicle was stolen when it was inspected.

On August 28, 1984, while serving the search warrant at [Petitioner]'s address, the Pennsylvania State Police observed a blue Pontiac Firebird having a vehicle identification number 2U87T2N527826 (vehicle number 28). They also noted that the vehicle had a special, hatch-type roof. Pennsylvania Department of Transportation records showed that the vehicle belonged to Frances Romansky. It was listed in the records as a 1972 Pontiac. On September 1, 1984, Officer David Swiderski, Mount Pocono Police Department, seized this Pontiac from Otto Stranak. Stranak told his Grand Jury on February 4, 1985 that [Petitioner] had loaned him this car sometime in August of 1984. Stranak had driven this car to Smithers' Mount Pocono garage where Smithers told him that the car was "hot" and to get off his property because the police were watching him. The Mount Pocono Police seized this car from Stranak three days later. An examination of the car by the police revealed that the vehicle was a 1977 Pontiac TransAm that had been reported stolen in Mount Pocono on September 27, 1983. Officer Swiderski locked this vehicle in the Mount Pocono police garage. Later that evening, the garage was broken into and the vehicle was stolen.

Frances Romansky appeared before this Grand Jury on February 4, 1985 and stated that she was the owner of this Pontiac, that it was a 1972 Pontiac, and that she had purchased it from a dealer in 1973.

* * *

As a further result of the examination of the inspection records of Smithers, it was determined that [Petitioner] had a truck inspected on October 1, 1982 that was identified as a 1978 Chevrolet, vehicle identification number K1546T136444. The records also showed that a year prior to that time, the truck had been inspected but was listed then as a 1979 model. Trooper Novatnak interviewed Smithers on October 4,

1984.  Smithers admitted that he knew that this truck was probably stolen.  The investigators contacted Special Agent Fuller who traced the VIN and told them that the VIN was for a 1966 Chevrolet truck (vehicle number 36).  The vehicle was seized pursuant to a search warrant on October 5, 1984 at [Petitioner]'s residence in Pike County.  On October 11, 1984, the truck was examined and it was determined that it was not a Chevrolet truck, but a 1977 GMC truck that had been reported stolen [on] April 28, 1981 from Mount Pocono, Barrett Township, Monroe County, Pennsylvania.

(Doc. 71-14 at 3; 16-18, Ex. N, Grand Jury Presentment.)

The remaining procedural history, referred to as a "procedural quagmire" by the state courts, is collected from the briefs and state court record filed in the case. Following grand jury proceedings, on August 27, 1985, Petitioner was charged in Pike County, Pennsylvania with three (3) counts of receiving stolen property, *see* 18 Pa. Cons. Stat. Ann. § 3925; three (3) counts of dealing of removal/falsification of identification numbers, *see* 75 Pa. Cons. Stat. Ann. § 7102; three (3) counts of dealing in vehicles with incorrect identification numbers, *see* 75 Pa. Cons. Stat. Ann. § 7103; three (3) counts of dealing in titles/plates for stolen vehicles, *see* 75 Pa. Cons. Stat. Ann. § 7111; two (2) counts of false application for certificate of title/registration, *see* 75 Pa. Cons. Stat. Ann. § 7121; and criminal conspiracy, *see* 18 Pa. Cons. Stat. Ann. § 903.  These charges related to a 1977 Pontiac Trans Am ("1977 Pontiac"), a 1979 Ford Bronco ("1979 Bronco"), and a 1977 GMC truck ("1977 GMC").

On February 15, 1986, Petitioner was charged in Wayne County, Pennsylvania with arson and related offenses pertaining to the 1979 Bronco that had been seized by

4

police pursuant to the Pike County investigation.  On September 17, 1986, Petitioner was convicted of these charges in Wayne County and sentenced on February 10, 1987 to a term of imprisonment of four (4) to ten (10) years.

On April 3, 1986, Petitioner was arrested in Monroe County, Pennsylvania for arson involving a lumber yard.  On November 10, 1986, Petitioner was convicted in Monroe County and sentenced on March 26, 1987 to a term of imprisonment of three (3) to six (6) years.

After being convicted and sentenced in Wayne and Monroe Counties, on May 6, 1987, Petitioner was convicted following a jury trial in Pike County of receiving stolen property, removal/falsification of identification numbers, and dealing in vehicles with incorrect identification numbers for the offenses related to the 1977 Pontiac.  Petitioner was also convicted of receiving stolen property, removal/falsification of identification numbers, dealing in vehicles with incorrect identification numbers, dealing in titles/plates for stolen vehicles, and false application for certificate of title/registration for the offenses related to the 1979 Bronco.  He was also convicted of conspiracy.  He was found not guilty of dealing in titles/plates for stolen vehicles for the 1977 Pontiac and all offenses charged relating to the 1977 GMC.

On December 17, 1987, Petitioner was sentenced in Pike County to a term of imprisonment of nine (9) to eighteen (18) years incarceration.  This sentence included

5

a two (2) to four (4) years term of incarceration on the conspiracy conviction, and the entire sentence was directed to run consecutively to Petitioner's convictions in Wayne and Monroe Counties.  It is the Pike County conviction and sentence that is the subject of these habeas corpus proceedings.

Petitioner filed a timely notice of appeal from the Pike County conviction.  On July 22, 1988, the Superior Court of Pennsylvania affirmed the conviction. *Commonwealth v. Romansky*, 548 A.2d 693 (Pa. Super. Ct. 1988).  Petitioner did not seek allowance of appeal in the Supreme Court of Pennsylvania or a writ of certiorari in the United States Supreme Court.  Thus, Petitioner's judgment of sentence became final on August 22, 1988.[1]

On December 21, 1990, Petitioner filed an untimely *pro se* petition for post-conviction relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541 *et seq*., alleging ineffective assistance of trial and appellate counsel.  On July 13 and 31, 1992, Petitioner filed *pro se* amended petitions.  On May 3, 1994, a counseled amended PCRA petition was filed on behalf of Petitioner by James P. Albrecht, Esquire.  Thereafter, on June 5, 1994, PCRA relief was denied, but Petitioner's sentence was amended to omit a sentence on a count for which he had been found not guilty.

---

[1]  Because August 21, 1988 was a Sunday, it is excluded from computation.  *See* 1 Pa. Cons. Stat. Ann. § 1908.

6

Petitioner filed a timely notice of appeal from the denial of PCRA relief on June 26, 1994. On January 10, 1996, the Pennsylvania Superior Court affirmed the denial of relief. *Commonwealth v. Romansky*, 676 A.2d 285 (Pa. Super. Ct. 1996). Petitioner's request for allowance of appeal was denied by the Pennsylvania Supreme Court on August 16, 1996. *Commonwealth v. Romansky*, 681 A.2d 177 (Pa. 1996).

On October 10, 1996, Petitioner filed a second *pro se* PCRA petition alleging that the Commonwealth had failed to disclose impeachment evidence pertaining to Commonwealth witness Thomas Smithers. Smithers' testimony at the 1987 trial related only to the offenses involving the 1979 Bronco. Gregory Chelak, Esquire, was appointed to represent Petitioner, and a counseled amended PCRA petition was subsequently filed. Thereafter, on February 24, 1997, the second PCRA petition was denied.

Petitioner filed a timely notice of appeal from the second denial of PCRA relief on March 5, 1997. On October 31, 1997, the Pennsylvania Superior Court reversed denial of PCRA relief on the second petition as to the claims related to the 1979 Bronco only. *Commonwealth v. Romansky*, 702 A.2d 1064 (Pa. Super. Ct. 1997). The court remanded for a new trial after determining that the Commonwealth failed to disclose an agreement with Thomas Smithers. *Id*. The court also remanded in order to correct inaccurate testimony with respect to Smithers. *Id*. Further, the court affirmed the denial of PCRA relief as it pertained to the 1977 Pontiac. *Id*.

7

On August 12, 1998, still represented by Attorney Chelak, Petitioner filed a motion to dismiss the remanded charges based on double jeopardy grounds. The motion was denied on September 2, 1998. After Petitioner appealed, on April 15, 1999, the Superior Court affirmed the denial of the motion to dismiss. *Commonwealth v. Romansky*, 938 A.2d 1056 (Pa. Super. Ct. 1999). The Pennsylvania Supreme Court denied Petitioner's application for allowance of appeal on October 5, 1999. *Commonwealth v. Romansky*, 745 A.2d 1221 (Pa. 1999).

Petitioner's new jury trial in Pike County was held in January 2000 ("2000 retrial"). On January 11, 2000, a jury convicted Petitioner again on the charges of receiving stolen property, removal/falsification of identification numbers, and dealing in vehicles with incorrect identification numbers. All of these charges related to the 1979 Bronco. On March 2, 2000, Petitioner was sentenced to a term of imprisonment of three and one-half (3 ½) to seven (7) years.

Petitioner filed a post-sentence motion on March 13, 2000, which was denied by the sentencing court on June 6, 2000. Subsequently, on June 21, 2000, Petitioner filed a timely notice of appeal through counsel, Attorney Chelak. In the direct appeal, Petitioner raised the following issues:

1.   Did the lower court commit reversible error of law by denying the Defendant's pre-trial motion for continuance in violation of both the Pennsylvania and Federal Constitutions?

2.      Did the lower court commit reversible error of law by allowing the
Defendant's conviction for receiving stolen property to stand
when the Commonwealth failed to prove the necessary element of
possession thereby violating Defendant's state and federal
constitutional rights to compulsory process and due process of
law?

3.      Did the lower court commit reversible error of law in sustaining
the guilty verdicts for the vehicle related offenses when the
evidence was insufficient as a matter of law and fact to sustain the
verdicts in violation of both state and federal constitutional law?

(Doc. 71-2 at 7, Ex. B, Pet. Br. Jan. 3, 2001.)  On June 22, 2001, the Superior Court

affirmed the convictions from the second trial, which related to the 1979 Bronco only.

*Commonwealth v. Romansky*, 779 A.2d 1222 (Pa. Super. Ct. 2001).  Petitioner did not

seek allowance of appeal in the Pennsylvania Supreme Court and, therefore, his

judgment of sentence became final on July 23, 2001.[2]  *See* Pa. R.A.P. 1113(a) ("a

petition for allowance of appeal shall be filed with the Prothonotary of the Supreme

Court within 30 days after the entry of the order of the Superior Court or the

Commonwealth Court sought to be reviewed.").

During the pendency of that direct appeal and prior to the date on which

Petitioner's March 3, 2000 judgment of sentence became final, on April 26, 2001,

Petitioner filed a premature third *pro se* PCRA petition which pertained to his second

conviction involving the 1979 Bronco only.  John Sanders, Esquire was appointed to

---

[2]  Because July 22, 2001 was a Sunday, it was excluded from computation.  *See* 1 Pa.
Cons. Stat. Ann. § 1908.

represent Petitioner with respect to that third PCRA petition on June 18, 2001.

However, on January 11, 2002, Attorney Sanders was permitted to withdraw and

Allen Howell, Esquire was appointed to represent Petitioner on the PCRA matter

pertaining to the 2000 re-trial.  On April 16, 2002, Attorney Howell filed a motion to

withdraw as counsel as to Petitioner's third PCRA petition, along with an

accompanying "no-merit" letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927

(Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. 1988).

On April 19, 2002, Petitioner filed a *pro se* PCRA petition pertaining to the

original 1987 trial.  At the time, the third PCRA petition relating to the 2000 re-trial

was pending.  On April 22, 2002, Attorney Howell was permitted to withdraw from

his appointment relating to the third PCRA petition addressing claims from the 2000

re-trial involving the 1979 Bronco only.  On June 11, 2002, the Pike County court

dismissed the third PCRA petition after determining it did not have jurisdiction

because the petition had been filed during the pendency of the direct appeal from the

2000 re-trial.

On July 10, 2002, Petitioner filed a *pro se* notice of appeal from that dismissal

of the third PCRA petition.  On September 19, 2003, the Superior Court vacated the

PCRA court's June 11, 2002 order and remanded with the directive that counsel

review Petitioner's April 19, 2002 PCRA petition, and then file either an amended

PCRA petition or request withdrawal from the case.  *See Commonwealth v.*

*Romansky*, No 976 EDA 2003 (Pa. Super. Ct. Sept. 19, 2003) (unpublished memorandum) (Doc. 63-1, Ex. 4).  Further, the court noted that the April 19, 2002 PCRA petition should have been treated as Petitioner's first PCRA petition relating to the 2000 retrial.[3]  After remand, on June 28, 2004, Jeremy Haugh, Esquire was appointed to represent Petitioner on the April 19, 2002 PCRA petition, and leave to amend was granted.  On November 2, 2004, counsel filed an amended PCRA petition, raising issues related to both the 1987 and 2000 trials.

After the filing of the amended PCRA petition, on March 3, 2005, the PCRA court issued an order directing the Commonwealth to provide Petitioner with four (4) audiotapes ("Pike County Audiotapes") containing conversations between Petitioner and Thomas Smithers, who was acting as a Commonwealth informant, and granting Petitioner's counsel thirty (30) days to amend the PCRA petition.  The Commonwealth provided the Pike County Audiotapes to Petitioner in May 2005.  After those tapes were transcribed, the PCRA court scheduled an evidentiary hearing for July 6, 2005.  At the conclusion of the hearing, the PCRA court directed Petitioner and his counsel to meet and organize a list of claims as they relate to any exculpatory evidence on the tapes and transcripts.  (*See* Doc. 63-1 at 75-76, Ex. 9.)  The PCRA court added, "In the event that there is any claim by Mr. Romansky that certain issues

---

[3]  In fact, the Superior Court characterized Petitioner's *pro se* appeal from the denial of his PCRA petition solely as a request for "post conviction relief from his March 2, 2000, judgment of sentence."  (Doc. 63-1 at 24, Ex. 4.)

raised in the [1987 trial] are covered by any of these claims, Defendant is directed to identify those issues and to provide a legal basis upon which the Court has any jurisdiction over these claims." (*Id*. at 76.)

Prior to the filing of an amended PCRA petition, Petitioner's counsel, Attorney Haugh, was relocated to Georgia through the U.S. Army Reserves.  As a result, on December 6, 2005, the PCRA court appointed Brandon Reish, Esquire, to replace Attorney Haugh and file the amended PCRA petition.

Instead of filing an amended PCRA petition, on January 30, 2007, Attorney Reish filed a motion requesting leave to amend the November 2, 2004 amended PCRA petition to reflect that the April 19, 2002 petition was Petitioner's first PCRA petition filed relating to the 2000 retrial and his third PCRA petition filed relating to the 1987 trial.  On March 8, 2007, the PCRA court issued an order denying Petitioner's motion.[4]  Petitioner filed a notice of appeal, and on January 4, 2008, the Superior Court quashed the appeal for lack of jurisdiction as it was not an appeal from a final order. *Commonwealth v. Romansky*, 947 A.2d 832 (Pa. Super. Ct. 2008).

---

[4]  The PCRA court initially denied Petitioner's motion on February 9, 2007.  The court stated, "Defendant's Petition is hereby DENIED.  Any issues regarding the first trial in 1987 are moot, as a second trial took place in 2000." *See Commonwealth v. Romansky*, 4 A.3d 706 (Pa. Super. Ct. 2003) (unpublished memorandum) (Doc. 71-5 at 6 n. 6, Ex. E.)  Petitioner's counsel subsequently filed a motion to clarify that order, specifically whether the PCRA petition had been denied by the order, or, whether the motion to amend had been denied.  Thereafter, the court issued the March 8, 2007 order, explaining that the motion to amend had been denied, not the amended PCRA petition, and as a result, the April 19, 2002 PCRA petition, as amended on November 2, 2004, was still pending.

On July 14, 2008, Petitioner filed a second motion for leave to amend the PCRA petition to include issues from the 2000 retrial, which the PCRA court granted on July 22, 2008.  On August 21, 2008, Petitioner filed a timely second amended PCRA petition.  After the Commonwealth responded to the petition seeking its dismissal, the PCRA court held an evidentiary hearing on February 18, 2009.  Following that hearing, the PCRA court denied the PCRA petition as untimely on June 9, 2009, as amended July 15, 2009.  Petitioner filed a timely notice of appeal.  On July 2, 2010, the Superior Court affirmed in part, vacated in part, and remanded to the PCRA court.  *See Romansky*, 4 A.3d 706.  Specifically, the court affirmed as to the dismissal of the 1987 conviction as untimely and, in particular, held that any issues dealing with the content of the Pike County Audiotapes relating to the 1987 trial are time barred.  Further, the court vacated the dismissal as to the 2000 retrial involving the 1979 Bronco only, including issues involving the Pike County Audiotapes, and remanded to the PCRA court for further proceedings.  On April 5, 2011, the Pennsylvania Supreme Court denied the petition for allowance of appeal and permitted Attorney Reish to withdraw.  *Commonwealth v. Romansky*, 549 MAL 2010 (Pa. 2011).

On October 18, 2011, the PCRA court appointed Petitioner's present counsel, Ronnie J. Fischer, Esquire, to represent Petitioner for the remanded PCRA proceedings.  Initially, counsel filed a motion in the Dauphin County Court of

13

Common Pleas seeking certain documents from the grand jury proceedings in Petitioner's case.  On April 11, 2012, the court granted the motion in part, directing Petitioner be provided with the grand jury presentment as well as the grand jury testimony of Petitioner, Francis Golden, and Michael Novatnik.  Thereafter, on July 5, 2012, Petitioner filed a motion to vacate illegal sentence with respect to Petitioner's conspiracy sentence.  After oral argument on the motion, the PCRA court denied the motion on October 1, 2012.  *Commonwealth v. Romansky*, No. 190-1985 MD (Pike Cnty. Comm. Pl, Oct. 1, 2012) (Doc. 71-8, Ex. H.)

On October 4, 2012, Petitioner filed a motion to vacate charges and discharge the Defendant, based on the provided grand jury documents.  After a hearing held on December 13, 2012, the PCRA court denied Petitioner's motion on January 24, 2013.  *Commonwealth v. Romansky*, No. 190-1985 MD (Pike Cnty. Comm. Pl. Jan. 24, 2013) (Doc. 63-4, Ex. 22.)

After briefing on the amended PCRA petition, the PCRA court held evidentiary hearings on March 4, 2013 and July 9, 2013.  On October 8, 2013, the PCRA court denied relief.  In its order, the PCRA court, *inter alia*, denied Petitioner's claims related to the 1987 conviction as time-barred.  *Commonwealth v. Romansky*, No. 190-1985 MD (Pike Cnty. Comm. Pl. Oct. 8, 2013) (unpublished order) (Doc. 71-9, Ex. I.) Petitioner filed a timely notice of appeal to the Pennsylvania Supreme Court on November 6, 2013.  On January 2, 2014, the PCRA court filed a 1925(a) opinion.  On

14

March 20, 2014, Petitioner filed a brief in support of the appeal, raising the following

issues:

> I.  The PCRA court denied [Petitioner] his state and federal
> constitutional rights under the Sixth and Fourteenth Amendment,
> pursuant to *Stirone v. U.S.* and its progeny, because the PCRA court
> found that the Commonwealth prosecuted [Petitioner] for additional
> charges beyond those identified in the grand jury presentment but
> refused to grant [Petitioner] any relief;
>
> II.  The PCRA court denied [Petitioner] his state and federal
> constitutional rights under the Fifth, Sixth and Fourteenth Amendments,
> pursuant to *Miranda v. Arizona*, *Massiah v. U.S.* and their progenies,
> because the Commonwealth introduced at trial incriminating statements
> deliberately elicited from [Petitioner] by a part-time police officer,
> outside of the presence of [Petitioner]'s counsel, after [Petitioner]
> invoked his right to counsel;
>
> III.  The PCRA court denied [Petitioner] his state and federal
> constitutional rights to a fair trial under the Fourteenth Amendment,
> pursuant to *Brady v. Maryland*, *Napue v. Illinois*, *Giglio v. U.S.* and their
> progenies, because the Commonwealth failed to correct false testimony
> and withheld exculpatory and impeachment evidence in violation of
> Pa.R.Crim.P. 573(B);
>
> IV.  The PCRA court denied [Petitioner] his state and federal due
> process rights pursuant to *Cole v. Arkansas* and its progeny because the
> PCRA court refused to correct [Petitioner]'s illegal sentence even though
> the Commonwealth conceded that [Petitioner] was convicted of and
> sentenced on a conspiracy offense for which he was never charged;
>
> V.  The PCRA court denied [Petitioner] his state and federal
> constitutional rights to effective assistance of counsel pursuant to
> *Strickland v. Washington*, *U.S. v. Cronic* and their progenies, because
> [Petitioner]'s counsel: (1) failed to investigate, (2) conceded

[Petitioner]'s guilt, (3) overrode [Petitioner]'s expressed desire to testify, and (4) failed to object to an illegal sentence;

VI.  The PCRA court denied [Petitioner] his state and federal constitutional rights under the Fourth Amendment and Pennsylvania's Wiretap Act because the Commonwealth failed to strictly comply with the requirements of the Wiretap Act by failing to ensure that the Attorney General or a Deputy Attorney General determined that Smithers voluntarily consented to each interception and by failing to keep a contemporaneous written log summarizing the content of each interception.

(Doc. 71-11 at 1-2, Pet.'s Br.)

On July 22, 2014, the Superior Court affirmed the denial of PCRA relief. *Commonwealth v. Romansky*, 105 A.3d 798 (Pa. Super. Ct. 2014) (Doc. 71-12, Ex. L.)  As to the 1987 convictions and sentence, the Superior Court affirmed the PCRA court's determination that any related claims were time-barred.  As to the remaining claims, the court found them to be either waived or without merit.  On February 25, 2015, the Supreme Court of Pennsylvania denied allowance of appeal. *Commonwealth v. Romansky*, 112 A.3d 651 (Pa. 2015).  Petitioner did not seek a writ of certiorari in the Supreme Court of the United States.

Prior to these latest PCRA proceedings in state court, on June 16, 2009, Petitioner filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 5.)  On August 10, 2009, Petitioner filed a motion to stay the habeas proceedings pending exhaustion of state court proceedings, (Doc. 21), which the

16

court granted by order dated December 3, 2009, (Doc. 40).  The stay was lifted on

March 8, 2016 following the denial of the petition for allowance of appeal.  (*See* Doc.

62.)  On April 15, 2016, Petitioner filed the instant counseled amended habeas

petition.  (Doc. 63.)  Respondents filed a response to the petition on July 15, 2016.

(Doc. 71.)  Petitioner filed a reply brief on August 31, 2016.  (Doc. 76.)  Thus, the

habeas petition is ripe for disposition.


## II.   <u>Discussion</u>

In his petition, Petitioner raises the following claims as grounds for relief:

I.  Petitioner was denied his Constitutional right to due process under the Sixth and Fourteenth Amendments pursuant to *Stirone v. United States*, 361 U.S. 212 (1960) and its progeny;

II.  Petitioner was denied his Constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) and *Massiah v. United States*, 377 U.S. 201 (1964) and their progeny;

III.  Petitioner was denied his Constitutional right to due process under the Fourteenth Amendment pursuant to *Brady v. Maryland*, 323 U.S. 83 (1963), *Napue v. Illinois*, 360 U.S. 264 (1959), and *Giglio v. United States*, 405 U.S. 150 (1972) and their progeny;

IV.  Petitioner was denied his Constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments pursuant to *Cole v. Arkansas*, 333 U.S. 196 (1948) and its progeny;

V.  Petitioner was denied his Constitutional right to due process under the Fifth, Sixth, and Fourteenth Amendments pursuant to

17

*Strickland v. Washington*, 466 U.S. 668 (1984), *United States v. Cronic*, 466 U.S. 648 (1984) and their progenies when counsel, (1) failed to object to Petitioner's illegal sentence, (2) failed to investigate, (3) overrode Petitioner's expressed desire to testify, and (4) conceded Petitioner's guilt;

      VI.  Petitioner was denied his Constitutional right to due process under the Fourth Amendment and Pennsylvania's Wiretap Act; and

      VII.  Petitioner was denied his compulsory and due process rights under the Fifth, Sixth, and Fourteenth Amendments pursuant to *United States v. Cronic*, 466 U.S. 648 (1984), *Ungar v. Sarafite*, 376 U.S. 575 (1964) and their progenies.

(Doc. 63.)  In their response to the petition, Respondents contend that Petitioner's claims are either, (1) untimely, (2) procedurally defaulted, and/or (3) meritless.

For purposes of discussion, the court will first address the timeliness of Petitioner's habeas petition, followed by a discussion of the claims presented in the petition.

## A.    <u>Timeliness of the Habeas Petition</u>

Respondents first argue that the portions of the instant § 2254 petition are barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). Upon review, the court finds as follows.

The court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2254(a).  A petition filed under § 2254 must be timely filed

under the stringent standards set forth in the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24,

1996).  *See* 28 U.S.C. § 2244(d)(1).  A state prisoner requesting habeas corpus relief

pursuant to § 2254 must adhere to a statute of limitations that provides, in relevant

part, as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a
> writ of habeas corpus by a person in custody pursuant to the judgment of
> a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
>
> * * *
>
> (2) The time during which a properly filed application for State post-
> conviction or other collateral review with respect to the pertinent
> judgment or claim is pending shall not be counted toward any period of
> limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2); *see Jones v. Morton*, 195 F.3d 153, 157 (3d Cir. 1999).

Thus, under the plain terms of § 2244(d)(1)(A), a state court criminal judgment does

not become final until appeals have been exhausted or the time for appeal has

expired.  *See Nara v. Frank*, 264 F.3d 310, 314 (3d Cir. 2001).

In the instant case, the court must address the timeliness of the instant petition

with respect to both Petitioner's 1987 and 2000 convictions, as the petition raises

claims relating to both trials.  First, as to the 1987 conviction, the Superior Court of

Pennsylvania affirmed Petitioner's conviction on July 22, 1998 after the filing of a

timely direct appeal.  *Commonwealth v. Romansky*, 548 A.2d 693 (Pa. Super. Ct.

1988).  Petitioner did not seek allowance of appeal in the Pennsylvania Supreme

Court or a writ of certiorari in the United States Supreme Court.  Thus, Petitioner's

judgment of sentence became final on August 22, 1988.  *See* 42 Pa. Cons. Stat. Ann.

§ 9545(b)(3) ("judgment becomes final at the conclusion of direct review, including

discretionary review in the Supreme Court of the United States and the Supreme

Court of Pennsylvania, or at the expiration of time for seeking the review").  Because

of the implied one-year grace period for petitioners whose convictions became final

before the effective date of AEDPA, and AEDPA was effective on April 24, 1996,

Petitioner had up until, and including April 23, 1997 to timely file a petition for writ

of habeas corpus.  *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998) ("we hold

that habeas petitions filed on or before April 23, 1997, may not be dismissed for

failure to comply with § 2244(d)(1)'s time limit").  However, Petitioner did not file

his federal habeas petition until June 16, 2009.

Our analysis of the timeliness of the 1987 convictions and sentence does not

end there, however.  Prior to April 23, 1997, Petitioner made a number of post-

conviction collateral filings in state court.  The latest of those filings was adjudicated

by the Superior Court on October 31, 1997, at which time the court reversed

Petitioner's conviction related to the 1979 Bronco and remanded for a new trial as to

the charges relating to that vehicle alone.  *Commonwealth v. Romansky*, 702 A.2d

1064 (Pa. Super. Ct. 1997).  In that same decision, the Superior Court affirmed the

denial of PCRA relief as it pertained to the 1977 Pontiac.  *Id*.  For purposes of

analysis, the court will accept that the federal statute of limitations was tolled during

that period.  *See* 28 U.S.C. § 2244(d)(2) (tolls the statute of limitations with respect to

the "time during which a properly filed application for State post-conviction or other

collateral review with respect to the pertinent judgment or claim is pending").

Respondents contend that Petitioner did not appeal the denial of relief related to the

1977 Pontiac and, accordingly, the judgment of sentence for those convictions

became final on November 30, 1997, or an additional thirty (30) days in which

Petitioner had to seek allowance of appeal from the Pennsylvania Supreme Court.

Using that date, Respondents argue, Petitioner had one (1) year, or until November

30, 1998, to timely file a federal habeas petition.  Because he did not file the instant

petition until June 16, 2009, Respondents argue that all claims relating to the 1987

trial for the charges pertaining to the 1977 Pontiac are time-barred.

21

In his reply, Petitioner counters that he did indeed appeal the denial of relief related to the 1977 Pontiac in a petition for allowance of appeal, apparently filed in 1997. Petitioner claims this petition for allowance of appeal was denied by the Pennsylvania Supreme Court on April 1, 1998. *Commonwealth v. Romansky*, 723 A.2d 670 (Pa. 1998). However, because the court has not been provided with a copy of Petitioner's petition for allowance of appeal, it has no way of knowing what was the substance of that petition, namely whether it contained an appeal from the denial of relief related to the 1977 Pontiac. Nevertheless, even if the court were to accept Petitioner's assertion here, the fact that his appeal was denied on April 1, 1998, and that he did not in fact file the instant federal habeas petition until June 16, 2009, does not provide him with relief from AEDPA's time limitations.[5] The court holds that all

---

[5] Petitioner also suggests that the federal statute of limitations did not begin to run until Petitioner received the Pike County Audiotapes pursuant to a March 3, 2005 PCRA court order. However, the Pike County Audiotapes were not presented to the jury in the 1987 trial, nor did they relate to the 1977 Pontiac, *see infra*.

Further, Petitioner counters Respondents' argument that all claims relating to the 1987 trial for charges pertaining to the 1977 Pontiac are time-barred by 28 U.S.C. § 2244(d), by citing *Magwood v. Patterson*, 561 U.S. 320 (2010). In *Magwood*, the Supreme Court considered whether a habeas petitioner's challenge to a new judgment for the first time (after the state court was directed to conduct a new sentencing hearing) was a "second or successive" petition under 28 U.S.C. § 2244(b). The Court found that the new challenge was not a "second or successive" petition. Applying *Magwood*, Petitioner argues that his March 2, 2000 resentencing hearing resulted in a new judgment, thereby allowing Petitioner to raise claims challenging his original conviction and sentence. However, *Magwood* is not applicable to this case. There is no dispute that Petitioner has not previously filed a habeas petition relating to the Pike County convictions and sentences in this court - this is his first such petition. As such, he has not had another such petition before this court in

claims related to the 1987 trial for the convictions and sentence related to the 1977

Pontiac are barred by the statute of limitations under 28 U.S.C. § 2244(d).[6]

Next, as to the 2000 retrial, the Superior Court affirmed Petitioner's

convictions and sentence from the second trial on June 22, 2001, after the filing of a

timely direct appeal. *Commonwealth v. Romansky*, 779 A.2d 1222 (Pa. Super. Ct.

2001). Petitioner had thirty (30) days thereafter to file a petition for allowance of

appeal in the Pennsylvania Supreme Court, but he did not do so. Therefore, his

judgment of sentence became final on July 23, 2001. Based on the one-year federal

statute of limitations period, Petitioner had until July 23, 2002 to timely file a federal

habeas petition.

However, prior to the expiration of that limitations period, Petitioner filed

PCRA petitions in state court on April 26, 2001 and April 19, 2002. Although the

PCRA court dismissed the April 26, 2001 petition as premature, as it was filed during

the pendency of Petitioner's direct appeal, on September 19, 2003, the Superior Court

---

which to raise issues related to these proceedings, and the "second or successive" bar under 28 U.S.C. § 2244(b) does not apply. Simply stated, the "second or successive" bar under § 2244(b) and the limitations period in § 2244(d) are not relevant to this case.

[6] Petitioner has made no arguments in support of equitable tolling of the limitations period. Regardless, the federal statute of limitations is subject to equitable tolling in only extraordinary circumstances, *see Holland v. Florida*, 560 U.S. 631 (2010), and the court finds no such circumstances here.

vacated the PCRA court's order and remanded with the directive that the April 19,

2002 PCRA petition be treated as Petitioner's first PCRA petition relating to the 2000

retrial.[7]  As a result, the federal limitations period was tolled until the Pennsylvania

Supreme Court denied Petitioner's petition for allowance of appeal from the denial of

PCRA relief on February 25, 2015.  Because Petitioner filed his federal habeas

petition on June 16, 2009, and that petition was stayed by order of this court on

December 3, 2009 in order for Petitioner to exhaust his state court remedies, the

claims presented in the habeas petition related to the 2000 retrial are not barred by the

statute of limitations under 28 U.S.C. § 2244(d).

---

[7]  At the PCRA hearing on the 2002 PCRA petition, the PCRA court expressly noted the scope of that proceeding:

> How about I make it as clear as I can here.  The '87 trial is not before this Court.  To the extent that something happened in '87 that impacted the 2000 trial I will allow it, but we're not going back and reevaluating the '87 trial or the convictions in that trial that have already been sustained.

(Notes of Testimony, PCRA Hearing, July 9, 2013, 48 ("NT PCRA 7/9/2013"), Doc. 63-3 at 49, Ex. 12.)

### B.     Claims Presented in the Habeas Petition

#### 1.     Legal Standards

##### a.     Exhaustion and Procedural Default

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant.  *See* 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

To satisfy the statutory requirements, a federal habeas petitioner must have presented the facts and legal theory associated with each claim through "one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).  It is not necessary for a petitioner seeking federal habeas relief to present his federal claims to state courts *both* on direct appeal *and* in a PCRA proceeding. *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984).

A petitioner bears the burden of demonstrating that he has "fairly presented" his claims to the state's highest court, either on direct appeal or in a state post conviction proceeding.[8]  *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *see also McMahon v. Fulcomer*, 821 F.2d 934, 940 (3d Cir. 1987).  A petitioner fairly presents his claim when he presents the same factual and legal basis for the claim to the state courts.  *Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007); *see also Duncan v. Henry*, 513 U.S. 364, 366 (1995).  In addition, the state court must be put on notice that a federal claim is being asserted.  *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted.  *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989).  Although deemed exhausted, such claims are

---

[8]  Pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000, issues presented to the Pennsylvania Superior Court are considered exhausted for the purpose of federal habeas corpus relief under section 2254.  *See In re: Exhaustion of States Remedies in Criminal and Post-Conviction Relief Cases*, No. 218, Judicial Administration Docket No. 1 (May 5, 2000) (per curiam).

considered procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *Lines*, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims.  *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750; *Caswell v. Ryan*, 953 F.2d 853, 857, 861-62 (3d Cir. 1992).  To demonstrate cause for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, the petitioner must show "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting [the entire proceeding] with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger*, 266 F.3d at

27

224.  The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray*, 477 U.S. at 496.

Further, if a respondent in a federal habeas proceeding fails to raise the issue of procedural default, the court may do so *sua sponte*.  *Yeatts v. Angelone*, 166 F.3d 255, 261-62 (4th Cir. 1999) (citing *Hull v. Freeman*, 932 F.2d 159, 164 n.4 (3d Cir. 1991), *overruled on other grounds by Caswell v. Ryan*, 953 F.2d 853 (3d Cir. 1992)). Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law.  *See, e.g.*, *Carter v. Vaughn*, 62 F.3d 591, 595 (3d Cir. 1995) (requiring the federal district court to determine whether the petitioner's failure to appeal in the state court constituted a waiver under state procedural law that barred state courts from considering the merits and, therefore, constituted a procedural default for habeas purposes even though no state court had made a determination that petitioner's failure to appeal constituted waiver under state law); *Chambers v. Thompson*, 150 F.3d 1324, 1327 (11th Cir. 1998).

In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the Supreme Court examined whether ineffective assistance at the initial review of a collateral proceeding on a

claim of ineffective assistance at trial can provide cause for a procedural defect in federal habeas proceedings. *Id*. at 1315. This case recognized a narrow exception to the *Coleman* rule (that ineffective assistance of counsel at the state collateral review level could not establish cause to excuse procedural default), holding that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1315.

Thus, a PCRA claim for ineffective trial counsel during an initial state collateral review may qualify as "cause" to excuse the default if: (1) as a threshold matter, the state requires a prisoner to bring an ineffective counsel claim in a collateral proceeding; (2) the state courts did not appoint counsel at the initial review collateral proceeding for an ineffective-assistance-at-trial claim; (3) where appointed counsel at the initial-review collateral proceeding was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984); and (4) the underlying ineffective-assistance-at-trial claim is substantial. *Martinez*, 132 S. Ct. at 1315-18.

The court will discuss exhaustion and procedural default in its discussion of the enumerated claims below.

29

b.    **Independent and Adequate State Grounds**

Default can also occur independently of exhaustion.  "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

"A state rule provides an independent and adequate basis for precluding federal review of a claim if the rule speaks in unmistakable terms, all state appellate courts refused to review the petitioner's claims on the merits, and the state courts' refusal was consistent with other decisions, that is, the procedural rule was consistently and regularly applied."  *Albrecht v. Horn*, 485 F.3d 103, 115 (3d Cir. 2007) (internal alterations and quotation marks omitted) (quoting *Doctor v. Walters*, 96 F.3d 675, 683-84 (3d Cir. 1996)).  Such a rule is independent "when resolution of the state procedural law question [does not] depend[ ] on a federal constitutional ruling."  *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).

30

However, a state procedural rule will not bar federal review of a habeas claim unless that rule was firmly established and regularly followed at the time the default occurred. *See Ford v. Georgia*, 498 U.S. 411, 424 (1991) (holding that "an adequate and independent state procedural bar to the entertainment of constitutional claims must have been firmly established and regularly followed by the time as of which it is to be applied" in order to preclude federal habeas review (internal quotation marks omitted)); *Doctor*, 96 F.3d at 684 ("A state rule is adequate only if it is 'consistently and regularly applied.'" (quoting *Johnson v. Mississippi*, 486 U.S. 578, 587 )). "As such, in determining whether a particular state rule is independent and adequate, the Court must identify the state procedural rule, ascertain the time at which the alleged default occurred and then decide whether the rule was firmly established and regularly and consistently applied at the time the alleged default occurred." *Laird v. Horn*, 159 F. Supp. 2d 58, 74 (E.D. Pa. 2001).

The court will discuss the application of default pursuant to an adequate and independent state procedural rule under each claim, where applicable.

### c.   <u>Merits</u>

Once a federal habeas court determines that a petitioner has exhausted state remedies and that a claim is not procedurally defaulted, the court must determine

31

whether the claim was adjudicated on the merits in state court. "[T]he distinction between claims that have been so adjudicated and claims that have not been means the difference between highly deferential review and *de novo* review." *Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528, 544 (3d Cir.), *cert. denied sub nom. Collins v. Wetzel*, 135 S. Ct. 454 (2014).

"For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves the claim on the basis of its substance, rather than on a procedural, or other, ground." *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009), as corrected (July 15, 2009) (clarifying that the adjudication "can occur at any level of state court"). Moreover, "the Supreme Court [has] held that qualification for AEDPA deference 'does not require citation of our [federal] cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state court decision contradicts them.'" *Priester v. Vaughn*, 382 F.3d 394, 398 (3d Cir. 2004) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

In the event that a claim was not adjudicated on the merits by the state courts, the District Court exercises "pre-AEDPA independent judgment." *Hameen v.*

*Delaware*, 212 F.3d 226, 248 (3d Cir. 2000); *see also* 28 U.S.C. § 2254(d) (limiting the grant of the writ "with respect to any claim that was adjudicated on the merits in State court proceedings").  This requires the federal court to "conduct a *de novo* review over pure legal questions and mixed questions of law and fact . . . .  However, § 2254(e)(1) still mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence."  *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010) (citation omitted) (internal quotation marks omitted).

If the state resolved the issue on the merits, the federal court reviews that decision with deference.  "[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of correction," *Greene v. Fisher*, 565 U.S. 34, ___, 132 S. Ct. 38, 43 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citation omitted).  The burden is on the petitioner to prove entitlement to the writ.  *Id*.

Section 2254(d) forecloses relief unless the state court's "adjudication of the claim [on the merits] – (1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  A decision is an "unreasonable application" of federal law if the state court identified the correct governing legal rule but applied the rule to the facts of the case in an objectively unreasonable manner.  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Finally, in determining whether the state court applied Supreme Court precedent reasonably, habeas courts may consider the decisions of the lower federal courts. *Matteo v. Superintendent*, 171 F.3d 877, 890 (3d Cir. 1999) ("[T]he primary

34

significance of the phrase 'as determined by the Supreme Court of the United States'

is that federal courts may not grant habeas corpus relief based on the state court's

failure to adhere to the precedent of a lower federal court on an issue that the

Supreme Court has not addressed.").  "In essence, § 2254(d)(1) 'demands that state-

court decisions be given the benefit of the doubt," and the Supreme Court has

cautioned lower courts against any 'readiness to attribute error' by failing to 'presume

the state court know and follow the law.'"  *Sawyer v. Superintendent Muncy SCI*, 619

F. App'x 163, 169 (3d Cir. 2015) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24

(2000)).

### 2.   Petitioner's Claims for Relief

#### a.   Claim I: Petitioner was prosecuted for additional charges beyond those recommended in the Grand Jury Presentment in violation of the Sixth and Fourteenth Amendments

Petitioner argues that he was denied his due process rights under the Sixth and

Fourteenth Amendments when he was prosecuted for additional charges beyond those

which were recommended in the Grand Jury Presentment in his case.  In his

supporting memorandum, Petitioner also now claims he was subjected to a

constructive amendment of the indictment without reconvening a grand jury in

35

violation of the Fifth Amendment.  In their response, Respondents make several arguments in support of denial of the claim, as the court will discuss herein.

### i.      Background

As set forth above, following the grand jury proceedings, the grand jury recommended to the Commonwealth that Petitioner be charged with receiving stolen property, conspiracy, removal or falsification of identification numbers, dealing in vehicles with removed or falsified numbers, dealing in titles and plates for stolen vehicles, and false application for certificate of title or registration.  (Doc. 71-14 at 23, Ex. N, Grand Jury Presentment No. 33.)  After a preliminary hearing, all of the charges were bound over for court except for two (2) counts of criminal conspiracy, which were withdrawn.  (Doc. 71-8 at 2, Ex. H.)  After the charges were held over for court, the Commonwealth filed a criminal information charging Petitioner with specific criminal charges relating to the three (3) separate vehicles previously referenced.  As to the 1977 Pontiac, Petitioner was charged with receiving stolen property, removal or falsification of identification number, dealing in vehicles with removed or falsified numbers, dealing in titles and plates for stolen vehicles and conspiracy in vehicles with removed or falsified numbers and/or theft.  (Doc. 71-8 at 2, Ex. H.)  As to the 1979 Bronco, Petitioner was charged with receiving stolen

36

property, removal or falsification of identification numbers, dealing in vehicles with removed or falsified numbers, dealing in titles and plates for stolen vehicles and false application for a certificate of title or registration. (*Id*.) And as to the 1977 GMC, Petitioner was charged with receiving stolen property, removal or falsification of identification numbers, dealing in vehicles with removed or falsified numbers, dealing in titles and plates for stolen vehicles and false application for a certificate of title or registration. (*Id*.)

Petitioner claims here that, after the grand jury issued its presentment, certain amendments or changes were made in the charges by the Commonwealth in its criminal information. It is Petitioner's contention that these changes made by the Commonwealth violated his constitutional rights.

### ii.      Exhaustion and Procedural Default

Respondents first take issue with Petitioner including, for the first time, his contention that his rights under the Fifth Amendment have been violated with respect to this claim. Thus, Respondents claim this argument has not been exhausted. The court notes that Petitioner did, in fact, raise this argument in his October 4, 2012 motion to vacate charges and discharge the Defendant, which was denied by the PCRA court in 2013 prior to the PCRA proceedings on the amended PCRA petition.

37

(*See* Doc. 63-1 at 125-27, Pet.'s Motion.)  Although the PCRA court denied the

motion, it also addressed the merits of the claim in its October 8, 2013 decision

following PCRA proceedings.  In addition, the Pennsylvania Superior Court

considered the issue, although not on the merits, in Petitioner's appeal.  In light of

this procedural history in the state courts, the court will not preclude a discussion of

the issue here on the basis of exhaustion.

Next, Respondents argue that the entire claim is procedurally defaulted because

the Superior Court deemed it waived for failure to, at a minimum, raise it in a direct

appeal.  (Doc. 71-12, Ex. L.)  Specifically, the Superior Court relied on Section 9544

of the PCRA, which states that an issue is waived under the PCRA "if the petitioner

could have raised it but failed to do so before trial, at trial, during unitary review, on

appeal or in a prior state postconviction proceeding."  42 Pa. Cons. Stat. Ann. §

9544(b).  (Doc. 71-12 at 10-12, Ex. L.)  As a result of this waiver, the Superior Court

declined to review the merits of this claim.[9]  Because the state court refused to decide

this claim's merits based on an established state rule of law independent of the federal

claim and adequate to support the refusal, the court agrees that this claim is

---

[9]    The Superior Court also noted that the PCRA court rejected this issue on the merits,
but explained that it may affirm the PCRA court "on any legal basis supported by the record." (*Id.* at
12 n.2, Ex. L) (citing *Commonwealth v. Doty*, 48 A.3d 451, 456 (Pa. Super. Ct. 2012).)

procedurally defaulted and federal review is foreclosed unless Petitioner can make a case to excuse the default.

As set forth in the standards above, in order for this court to consider the merits of this claim, Petitioner must show "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default.  Petitioner seeks to excuse the default on the basis that he was not provided with a copy of Grand Jury Presentment No. 33 until his motion to compel its discovery was granted by order dated April 11, 2012. Thereafter, Petitioner raised the claim in his motion to vacate charges and discharge the Defendant, which was denied by the PCRA court.  In addition, Petitioner appealed the denial to the Superior Court, and filed a petition for allowance of appeal in the Pennsylvania Supreme Court.  For purposes of disposition of the claim here, although the claim was deemed waived by the Superior Court and thus is procedurally defaulted before this court, the court will excuse the procedural default on the basis of Petitioner's inability to secure a copy of the Grand Jury Presentment until 2012.

Having excused Petitioner's procedural default of this claim, the court will conduct a *de novo* review over the pure legal questions and mixed questions of law and facts in this issue.  However, because the PCRA court did consider this claim on the merits, the court will presume that the PCRA court's factual determinations are

correct unless rebutted by clear and convincing evidence.  *See* 28 U.S.C. §

2254(e)(1); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001); *Palmer*, 592 F.3d at

392.

In deciding this issue, the PCRA court set forth the following:

[Petitioner] claims that the Commonwealth committed a constitutional violation when it charged [Petitioner] with additional charges beyond those contained in the Investigative Grand Jury recommendation.  However, it is extremely important to recognize the legal distinction between a Grand Jury which issues Indictments and an Investigative Grand Jury which can only make a recommendation for prosecution.  First, an Investigative Grand Jury has no authority to file charges against any individual.  The Investigative Grand Jury cannot issue an Indictment.  Under applicable law, an Investigating Grand Jury has only the authority to issue a "Presentment" which has clearly been defined as simply a recommendation to the prosecutor to file charges. *See* 42 Pa. C.S.A. § 4551.

A review of [Petitioner's] claims clearly indicates that [Petitioner] equates a "Presentment" with an "Indictment" and therefore he argues they should be treated similarly.  However, the law is very clear that since a "Presentment" is only a recommendation, the determination as to which charges should ultimately be filed is left to the discretion of the prosecutor.  In this case the Prosecutor determined that [Petitioner] had involvement with all three (3) vehicles in question and ultimately determined that [Petitioner] would be charged accordingly in the Criminal Information filed by the Prosecutor.

Based upon a specific Order entered by this Court on [Petitioner's] Motion to Vacate the Charges and to Discharge [Petitioner] based upon the improper conduct of the Prosecutor, that Motion was denied pursuant to an Order entered on January 24, 2013.  The specific terms of that Order are INCORPORATED herein.

40

Specifically, the Court notes that while an Indicting Grand Jury has the power to issue criminal charges against the defendant and to have the defendant arrested and prosecuted on the offenses set forth in the Indictment, an Investigating Grand Jury has no authority to file charges against any individual.  Rather, the Investigating Grand Jury can conduct an investigation of various matters and can make a recommendation to the prosecutor regarding the Investigating Grand Jury's belief as to what the evidence indicates.  However, a prosecutor is under no obligation to accept the recommendation to prosecute the defendant for any or all of the charges set forth in the Presentment.  Further, there is nothing in Pennsylvania law that limits a prosecutor's authority to proceed only on the charges recommended by the Investigating Grand Jury.  *See Commonwealth v. Mallon*, 356 Pa. Super. 493, 515 A.2d 1 (Pa. Super 1986).  42 Pa C.S.A. § 4542, § 4551(c).  The prosecutor is the final arbiter of the content of the Presentment from the Investigating Grand Jury and is authorized to issue a Criminal Information that does not track the Investigating Grand Jury's Presentment.  *Commonwealth v. Slick*, 432 Pa. Super 563, 579, 639 A.2d 482 (Pa. Super 1994).

Similarly, the prosecutor has authority to proceed with the case even if the Presentment has been quashed by the supervising judge.  This is based on the fact that the evidence of criminal activity may have been discovered by the prosecutor as a result of the Investigating Grand Jury proceedings even though a Presentment has not been issued, or if it was issued [and] the presiding judge quashed it.  *See* 42 Pa. C.S.A. § 4551, § 4552.

Therefore, [Petitioner's] claim that he was denied his federal and state constitutional due process rights as a result of the inclusion of additional charges in the Criminal Information is hereby DENIED.

(Doc. 71-9 at 5-7, Ex. I.)

Applying the facts determined by the PCRA court, this court finds Petitioner's

claim to be without merit.  At the time of Petitioner's trial, Pennsylvania lawfully

41

used both Investigating Grand Juries and Indicting Grand Juries. *See Commonwealth v. Mallon*, 515 A.2d 1, 2-4 (Pa. Super. Ct. 1986).  In Petitioner's case, an Investigating Grand Jury issued Presentment No. 33, recommending charges against Petitioner and other individuals involved in the case.  By statute governing at the time, the Investigating Grand Jury did not have the power to formally charge, or indict, an individual for criminal acts. *See Mallon*, 515 A.2d at 4 ('[a]n investigating grand jury presentment, unlike an indictment, criminal complaint, or information, does not formally charge an accused.  Instead, it is merely a recommendation, in advisory fashion, that the prosecutor should bring formal charges."); *see also* 42 Pa. Cons. Stat. Ann. § 4548(c) ("*Except for the power to indict*, the investigating grand jury shall have every power available to any other grand jury in the Commonwealth.") (emphasis added).  Importantly, the *Mallon* court noted that, "[t]he individual named in the presentment is not subject to any liberty restraints, and the presentment itself is insufficient to support a prosecution.  It is only when the prosecutor chooses to file a complaint that the accused is 'held to answer' a criminal charge and is subject to arrest and imprisonment." *Id*., 515 A.2d at 4.  Petitioner has not shown that this law is unconstitutional under the Sixth or Fourteenth Amendments, and the court finds no

42

violation of federal law with respect to this claim.[10]   Further, from a review of the

Grand Jury Presentment, it is apparent that the Grand Jury set forth facts supporting

Petitioner's criminal involvement relating to all three vehicles.  Thus, Petitioner is not

entitled to habeas relief on this claim.

> **b.    Claim II: The Commonwealth introduced incriminating statements deliberately elicited from Petitioner outside the presence of counsel after an invocation of the right to counsel, in violation of the Fifth, Sixth, and Fourteenth Amendments**

Petitioner contends that his Fifth, Sixth, and Fourteenth Amendment rights

were violated when the Commonwealth introduced at trial incriminating statements

from him in violation of his right to counsel.  These statements were part of the Pike

County Audiotapes turned over to Petitioner in May 2005.  In response, Respondents

---

[10]   To the extent that Petitioner is claiming a violation of the Fifth Amendment under this claim, Petitioner is not entitled to relief because the Fifth Amendment's grand jury indictment requirement does not apply, via the Fourteenth Amendment, to the states.  In *Hurtado v. California*, 110 U.S. 516, 520 (1884), the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not require state prosecutions to proceed by grand jury indictment. This landmark case remains law.  *See Wilson v. Lindler*, 8 F.3d 173, 174 (4th Cir. 1993), *cert. denied*, 510 U.S. 1131 (1994); *Wilson v. Soloff*, 920 F.2d 1114, 1118 (3d Cir. 1990); *Martinez v. Shapp*, 859 F. Supp. 170, 171-72 (E.D. Pa. 1994); *Buehl v. Lehman*, 802 F. Supp. 1266, 1269 (E.D. Pa. 1992); *Commonwealth v. Slick*, 639 A.2d 481, 485 (Pa. Super. Ct. 1994).  It follows, then, that the laws of the Commonwealth of Pennsylvania are not subject to the Fifth Amendment's requirement of grand jury indictment.  As a result, no set of facts alleged by Petitioner with respect to this claim under the Fifth Amendment entitles him to relief.

argue the claim is procedurally defaulted or, in the alternative, is without merit.  For the reasons set forth below, habeas relief on this claim will be denied.

First, it is important to note that no recordings of Petitioner making any incriminating statements were introduced at either trial.  In his petition, Petitioner argues that his rights were violated when the Commonwealth introduced trial witness testimony regarding statements Petitioner allegedly made during the course of the conversations that were recorded in the Pike County Audiotapes.  According to Petitioner, the recordings were made on December 19, 1985, January 14, 1986, and January 19, 1986.  (Doc. 69 at 47.)  Petitioner made the allegedly incriminating statements to Thomas Smithers, who testified at the 1987 trial, but not at the 2000 retrial.  At the 1987 trial, Smithers testified that he was a friend of Petitioner's and that the two had known each other for nine (9) years.  (Notes of Testimony, Trial, May 4, 1987, 72, 94 ("NT Trial 5/4/1987"), Doc. 63-6, at 72, 94, Ex. 27.)  He stated that, after he discovered that the 1979 Bronco had been set on fire at the Pennsylvania Police Barracks on September 24, 1984, Petitioner told him,

> That he went up there.  He was going to slap them in the face.  He was going to blow up the vehicle.  He was going to blow up the State Police Barracks.  He wasn't done there with them.  He knew where they lived, where their families lived.  He knew where my family was.  He would roll my car over.  Had pictures of my family and the house.  Pictures of all the other people in the investigation.

(NT Trial 5/4/1987 75, Doc. 63-6 at 75, Ex. 27.)  Petitioner's counsel did not cross-examine Smithers on any of these statements.

Petitioner also claims that the Commonwealth improperly introduced certain facts of the case that only could have been deduced from the statements made in the Pike County Audiotapes, tapes that were not turned over to Petitioner prior to either trial and that were made in violation of his right to counsel.  More specifically, Petitioner claims that, "based upon its knowledge from the Pike County Audiotapes, the Commonwealth presented to the jury via witness testimony that the Bronco was in the possession of [P]etitioner and that [P]etitioner was responsible for the arson because a Bondo can was found at the residence of [P]etitioner that matched cans found at the scene of the arson."[11]  (Doc. 69 at 50.)  Petitioner claims these statements to the jury were only made possible because they were deliberately and improperly elicited from Petitioner, as shown in the Pike County Audiotapes.  (*Id.*)

At the 2000 retrial,  Special Agent Michael Fuller from the Pennsylvania Attorney General's Office testified that he examined the 1979 Ford Bronco for its VIN number information at Petitioner's home in Pike County on August 28, 1984

---

[11]   As the court has determined herein that Petitioner's claims with respect to the 1977 Firebird are untimely, the court will only address Petitioner's argument here as it pertains to the 1979 Bronco.

pursuant to a search warrant issued as to Petitioner's wife.  (Notes of Testimony, Trial, Jan. 11, 2000, 36-37 ("NT Trial 1/11/2000"), Doc. 63-7 at 37-38, Ex. 28.) Alexander Horek of the Pennsylvania State Police was also at the Romansky residence that day and participated in seizing the Bronco and impounding it at the State Police Barracks.  (NT Trial 1/11/2000 55-56, Doc. 63-7 at 54-55, Ex. 28.)  In addition, on September 6, 1984, he interviewed Petitioner, who informed him that the 1979 Bronco was his vehicle and that he had owned it since May 1980.  (*Id*. at 57, Doc. 63-7 at 58, Ex. 28.)  Frances Golden of the Pennsylvania State Police was also present for the search at the Romansky residence in August 1984, and interviewed Petitioner at the police barracks on September 4, 1984.  (*Id*. at 70-72, Doc. 63-7 at 71-73, Ex. 28.)  Petitioner inspected the Bronco prior to the interview and confirmed it was his vehicle.  (*Id*. at 72, Doc. 63-7 at 73, Ex. 28.)  Investigator Golden testified that, when he arrived at police barracks on September 25, 1984, a fire had occurred in the rear parking area of the barracks, damaging three vehicles, including the 1979 Bronco.  (*Id*. at 74-76, Doc. 63-7 at 75-77, Ex. 28.)  He noticed that an accelerant had been used to start the fire and found partially burned rags in and around the Bronco.  (*Id*. at 76, Doc. 63-7 at 77, Ex. 28.)  He also found two (2) cans of Bondo fiberglass resin in the vicinity.  (*Id*. at 80-81, Doc. 63-7 at 81-82, Ex. 28.)  Michael Novatnik of

46

the State Police testified that, in early October 1984, he seized another can of Bondo resin from Petitioner's basement that had the same markings depicting the price and lot numbers of the cans.  (*Id*. at 86-87, Doc. 63-7 at 87-88, Ex. 28.)  Each of these witnesses was cross-examined at trial by Petitioner's counsel.  In particular, counsel questioned Trooper Novatnik as to whether, (1) the Bondo cans could have belonged to Petitioner's brother, as Petitioner had earlier stated, (2) any fingerprints had been taken from any of the three (3) cans of Bondo, and (3) the exact location of the Bondo cans relative to the Bronco and other vehicles in the lot at the time of the fire.  (*Id*. at 89-92, Doc. 63-7 at 90-93, Ex. 28.)

In response to this claim, Respondents first argue that it is procedurally defaulted because the Superior Court, as it did with Petitioner's first claim here, deemed it waived for failure, at a minimum, to raise it in a direct appeal.  In response, Petitioner seeks to excuse the procedural default on the basis that he was not provided with Pike County Audiotapes until May 2005.  Thereafter, Petitioner raised the claim in an amended PCRA petition, and it was denied by the PCRA court in its October 8, 2013 opinion.  In addition, Petitioner appealed the denial to the Superior Court, and filed a petition for allowance of appeal in the Pennsylvania Supreme Court.  For purposes of disposition of the claim here, although the claim was deemed waived by

47

the Superior Court, the court will excuse the procedural default on the basis of his

inability to obtain the Pike County Audiotapes until 2005.[12]

---

[12]   Throughout the filings made in this case, there seems to be a dispute about when exactly Petitioner knew of the existence of the taped conversations he had with Smithers, the subject of the Pike County Audiotapes.  Indeed, Petitioner argues that he could not raise certain claims in either of his direct appeals from his 1987 and 2000 trials because he did not obtain the tapes themselves until 2005, at which time the Pike County Court of Common Pleas ordered their discovery.  (*See* Doc. 69 at 34.)  He also claims that he did not learn of the existence of the Pike County Audiotapes until 2002, through a Third Circuit Court order.  *See Commonwealth v. Romansky*, No. 2294 EDA 2009 (Pa. Super Ct. July 2, 2010) (Doc. 63-1 at 43, Ex. 5.)  The Superior Court resolved this question in its memorandum and order affirming in part and vacating in part the PCRA court's dismissal of the PCRA petition when it addressed whether Petitioner successfully plead and proved a time bar exception to raising claims from the 1987 conviction:

> [Petitioner] claims that he first became aware of the existence of these tapes on March 27, 2002, through an order from the 3rd Circuit of United States Court of Appeals. This claim is wholly belied by the record for the following reasons.
>
> On January 10, 2000, [Petitioner] filed a motion *in limine* with the Court of Common Pleas of Pike County. C.R. Part 8 at 6.  In this motion, [Petitioner] argued that certain evidence should be precluded from his retrial which was scheduled to occur one day later, on January 11, 2000.  In particular [Petitioner] argued,
>
> > [a]fter the filing of the criminal complaint in this matter against the Defendant, the Commonwealth reached a leniency agreement with Mr. Thomas Smithers whereby Smithers would cooperate with the Commonwealth in the prosecutions of others in exchange for the Commonwealth not pursuing criminal charges against Smithers.  As part of that cooperation, the Commonwealth placed a body wire on Smithers during certain conversations he had with the Defendant after the filing of criminal charges against the Defendant.  During these **taped conversations**, Smithers tried to elicit incriminating statements from the Defendant as part of his cooperation with the Commonwealth.
>
> C.R. Part 8 at 6 (emphasis added).
>
> Obviously, [Petitioner] could not have filed this motion on January 10, 2000,

48

Having excused Petitioner's procedural default of this claim, the court will conduct a *de novo* review over the pure legal questions and mixed questions of law and facts in this issue.  However, because the PCRA court did consider this claim on

---

unless he knew about the existence of the tapes.  Although [Petitioner] claims to have only learned about the tapes through a March 27, 2002, 3rd Circuit United States Court of Appeals order, it is clear [Petitioner] knew about these tapes as early as January 10, 2000.  From the point at which [Petitioner] became aware of the existence of the tapes he had 60 days to file a PCRA petition raising a time bar exception. [Petitioner] did not file his PCRA petition raising an after discovered evidence claim until April 19, 2002, at least two years too late.

> [W]hen a petitioner alleges entitlement to an exception to the one-year time limitation, the petition will only be addressed on substantive grounds if it is "filed within 60 days of the date the claim could have been presented."  42 Pa.C.S.A. § 9545(b)(2).  Thus, a petitioner relying on the after-discovered evidence exception is further required to file his or her PCRA petition within 60 days of the discovery of the new evidence proffered in support of relief.

*Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 783 (Pa. 2000).

[Petitioner] had 60 days from January 10, 2000, specifically until March 10, 2000, before the claim could no longer be raised.  Accordingly, we conclude that [Petitioner]'s after discovered evidence argument is waived for failing to file his PCRA petition within 60 days of discovering the purported after discovered evidence.

Any issues dealing with the content of the tapes relating to the 1987 trial are time barred and no exception applies because [Petitioner] failed to raise his claim within 60 days. [Petitioner] is precluded from pursuing this issue any further.  Any issues dealing with the tapes pertaining to the 2000 trial, which [Petitioner] has pled in his 1925(b) statement and briefed upon appeal, can be decided on the merits by the PCRA court as they are still timely before the court.

(Doc. 63-1 at 42-44, Ex. 5.)  The court agrees with this reasoned decision by the Pennsylvania Superior Court as to whether to consider issues Petitioner raises here with respect to the 1987 trial.  The court will excuse Petitioner's procedural default on claims relating to these Pike County Audiotapes that involve the 2000 retrial, but not the 1987 trial.

49

the merits, the court will presume that the PCRA court's factual determinations are correct unless rebutted by clear and convincing evidence. *See Palmer*, 592 F.3d at 392; 28 U.S.C. § 2254(e)(1).  In its October 8, 2013 decision on the amended PCRA petition, the PCRA court made the following factual determinations in deciding this issue:

> While [Petitioner] claims that multiple statements from [Petitioner] were elicited by Thomas Smithers as part of the wiretap and these statements were later introduced at Trial, [Petitioner] has failed to cite to any specific statements that were introduced at Trial.  First, the recordings themselves were not introduced at Trial.  Second, while Defense points to many statements made in the recordings between Smithers and [Petitioner] related to the offense, no specific reference is made to any of the statements being actually admitted into Trial.  Third, while the Commonwealth makes reference to the "Bondo can" and information related thereto, it is important to note that the "Bondo cans" were discovered at the arson site immediately following the arson and an additional "Bondo can" was located at [Petitioner]'s home in October, 1984 long before any of these conversations occurred.
>
> In addition, the conversations between Smithers and [Petitioner], while being organized by the Attorney General's Office and consented to by Smithers, clearly indicate wide ranging and creative conversations designed to elicit information, make up facts, provide excuses and alibis and basically epitomize the concept of a totally unreliable conversation.  For Defense Counsel to now claim that all statements contained therein constitute factual statements or reliable evidence is clearly beyond the realm of reality.

(Doc. 79-1 at 9-10, Ex. I.)

Applying these facts determined by the PCRA court, and finding that Petitioner has not rebutted them with any clear and convincing evidence, the court concludes that Petitioner's claim is without merit.  In his argument before this court Petitioner has failed to cite any portion of the trial record in which the complained of statements were admitted at trial or somehow illegally used to obtain evidence which, importantly, was obtained long before the Pike County Audiotapes were recorded, let alone handed over to Petitioner.  Furthermore, logic dictates that, even without the content of the Pike County Audiotapes, Petitioner had, when confronted with relevant witness testimony at trial, not only the opportunity for, but also the power to engage in, cross-examination in the presence of the jury.  For these reasons, the court finds no constitutional violations here.  Petitioner is not entitled to relief on this claim.

<blockquote>

**c.    Claim III: The Commonwealth withheld exculpatory and impeachment evidence and failed to correct false testimony, in violation of the Fifth, Sixth, and Fourteenth Amendments**

</blockquote>

In this claim, Petitioner contends that the Commonwealth withheld exculpatory and impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1968) and its progeny.  In addition, Petitioner argues that the Commonwealth failed to correct false testimony in violation of *Napue v. Illinois*, 360 U.S. 264 (1959) and its progeny.  In response, Respondents contend that these claims are unexhausted or

51

procedurally defaulted or, in the alternative, are without merit.  Upon careful review,

habeas relief on both issues will be denied.

In *Brady*, the Supreme Court held that "suppression by the prosecution of

evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87.  To

establish a *Brady* violation, a petitioner must demonstrate that: (1) evidence was

suppressed by the state, either willfully or inadvertently; (2) the evidence is favorable

to the accused, either because it is exculpatory or impeaching; and (3) the evidence

was material to the outcome of the case. *Strickler v. Greene*, 527 U.S. 263, 281-82

(1999).  The materiality standard is satisfied when the evidence places the "whole

case in such a different light as to undermine confidence in the verdict." *Kyles v.*

*Whitley*, 514 U.S. 419, 434-35 (1995).  Further, this standard is satisfied "if there is a

reasonable probability that, had the evidence been disclosed, the result of the

proceeding would be different." *Strickler*, 527 U.S. at 281-82.  In order for evidence

to be material, it is not necessary that the evidence establish by a preponderance that

disclosure of the evidence would have resulted in an acquittal. *Kyles*, 514 U.S. at

434-35.  However, in making a determination of materiality, the assessment of the

omitted evidence's impact must take account of the cumulative effect of the

suppressed evidence in light of the other evidence, not merely the probative value of the suppressed evidence standing alone. *Id*. at 436-37.

As to Petitioner's claim regarding false testimony, a "state may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). It is "fundamentally unfair to the accused where 'the prosecution knew, or should have known, of the perjury.'" *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). "[T]he conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id*. (quoting *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992)).

To establish prosecutor misconduct, a petitioner must establish: "(1): [the government's witness] committed perjury; (2) the government knew or should have known of his perjury; (3) the testimony went uncorrected; and (4) there is any reasonable likelihood that the false testimony could have affected the verdict." *United States v. John-Baptiste*, 747 F.3d 186, 210 (3d Cir. 2014) (citing *Lambert*, 387 F.3d at 242)).

In this case, Petitioner argues that the Commonwealth suppressed nine (9) items of favorable evidence that are material. In addition, he contends that the

53

Commonwealth failed to correct the false testimony of certain witnesses, despite

knowing of its falsity.  The court will discuss each issue after providing background

as to all items and testimony.

### i.      Exculpatory and Impeachment Evidence

Petitioner argues that the Commonwealth failed to disclose: (1) Grand Jury

Presentment No. 33, (2) Notice of Submission No. 7, (3) Petitioner's grand jury

testimony, (4) Smithers' investigative file, including his grand jury testimony and

testimony about Petitioner, (5) Smithers' immunity agreement, (6) the title to the

1979 Bronco, (7) photographs and other evidence Petitioner provided to Smithers

during their audiotaped conversations, (8) the police report pertaining to the arson,

and (9) audiotaped conversations between Petitioner and Smithers (Pike County

Audiotapes).  With the exception of two (2) items, Presentment No. 33 and the Pike

County Audiotapes, the Superior Court deemed the claims pertaining to the remaining

seven (7) items waived for failure to preserve.  However, when the Superior Court

addressed the merits of the other two (2) claimed violations, it included the other

seven (7) items in its reasoning for denial of the claim.

In response, Respondents first argue that the seven (7) alleged violations not

discussed by the Superior Court are unexhausted as well as procedurally defaulted.

54

As to exhaustion, Respondents argue that Petitioner has failed to fairly present the issue as currently argued because he has added legal theories never presented in state court, specifically he has added alleged violations of the Fifth and Sixth Amendments. (*See* Doc. 71 at 57.) Upon review of Petitioner's briefing to the state courts, it is clear that Petitioner has cited federal law in all of those state court arguments now presented in his federal habeas petition. (*See* Doc. 71-11, Ex. K, Pet.'s Br.) Thus, the court will consider the present claim exhausted.

As to procedural default, Respondents claim procedural default on the basis that the Superior Court deemed waived the seven (7) alleged violations for failure to adequately identify and present these violations. (Doc. 71-12 at 20, Ex. L.) From a review of the record, the court notes that Petitioner's Pike County docket indicates that, on July 8, 2005, the Pike County court directed Petitioner to file a copy of a list of exculpatory evidence, as well as a brief in support of his claim that those items are exculpatory. *In re Romansky*, CP-52-MD-0000190-1985 (Pike Cnty. Comm. Pl.). The docket further shows that a list of exculpatory evidence was filed by Attorney Reish on January 10, 2007, followed by a supporting brief on January 30, 2007.[13] *Id*.

---

[13] Petitioner includes in his exhibits in support of the habeas petition, a list of exculpatory evidence (Doc. 63-8, Ex. 31), and a list of false testimony (Doc. 63-8, Ex. 32). These lists contain headings indicating a filing in the Pike County Court of Common Pleas, but are not date-stamped as received and filed in that court. Further, no supporting state briefs containing

Even so, it does appear that Petitioner did not specify these items in his PCRA

petition briefing to the lower courts.  However, during the July 6, 2013 PCRA

hearing, Petitioner outlined each item listed herein when he testified.  (*See* Notes of

Testimony, PCRA Hearing, July 9, 2013 106-127 ("NT PCRA 7/9/2013"), Doc. 63-3

at 107-128, Ex. 12.)  While Petitioner's own testimony at his PCRA hearing was not

earlier or later argued in briefing before the state court, for purposes of finality of a

decision here, the court will excuse the procedural default and review this claim on

the seven (7) items on the merits.  Furthermore, even though the Pennsylvania

Superior Court recognized that Petitioner only raised the withholding of Presentment

No. 33 and the Pike County Audiotapes to the lower state courts, it did analyze the

*Brady* claim on the merits as it pertained to all nine (9) items presented here.  Thus,

this court will review the entire claim using AEDPA deference.

The court will now recount Petitioner's 2013 PCRA hearing testimony, as the

court has no other argument that was presented in briefing to the state court.

First, as to the exculpatory nature of Presentment No. 33, Petitioner stated,

> Presentment 33 shows that I was recommended solely on the
> charges pertaining to the Chevrolet truck and other people such as
> Thomas Smithers was recommended for the Bronco and that Frances

---

argument are attached as exhibits filed in this court.

56

Romansky was recommended for the Firebird.  They made clear the false testimony that Mr. Abeln submitted to the Grand Jury pertaining to the location of the Bronco, . . . they have testimony from the witnesses that went with me Thomas Smithers' . . . .

* * *

[The Commonwealth] claim[s] that there was an arson on the Bronco that they charged me with.  The Grand Jury Presentment makes it clear that the Bronco was vehicle No. 27 and yet at the Wayne County trial the subject of the arson was vehicle No. 14 and that vehicle was owned by Francis Lonergan and that makes it clear that no such arson took place on this Bronco.

* * *

[O]n the arson charges also it specifies people who own like a Cadillac, a Chevrolet truck, there was numerous people mentioned in there that could have been investigated and interviewed pertaining to this arson.

(NT PCRA 7/9/2013 107-09, Doc. 63-3 at 108-10, Ex. 12.)

In his brief before this court, Petitioner additionally argues that Presentment No. 33 is exculpatory because it shows that the Grand Jury also recommended charges for Smithers with respect to the 1979 Bronco.  Had Petitioner obtained the Presentment prior to his 1987 trial, he argues, it would not have been possible for Smithers to falsely testify at that trial about his cooperation with police or that he was also being investigated for the crimes.  In addition, Petitioner argues he would not have had the conversations with Smithers, which later became the Pike County

57

Audiotapes, had he known of the content of Presentment No. 33.  Instead, he would

have moved to dismiss the charges against him with respect to the 1979 Bronco.

Second, as to Notice of Submission No. 7, Petitioner asserted,

The notice that has to be presented to the Court, the supervising
Judge needs to specify why he would like to convene a Grand Jury and
the reason that this Grand Jury was convened pursuant to the charges is
corrupt organization.

I was no part of a corrupt organization nor was anyone that I was
there with.  That challenge could have been made prior to the Grand Jury
proceedings and because Notice No. 7 was withheld we were denied the
right to even challenge the Grand Jury proceedings for what the Grand
Jury was even being convened about.

(NT PCRA 7/9/2013 109, Doc. 63-3 at 110, Ex. 12.)

Third, as to certain Grand Jury testimony, namely Petitioner's own testimony,

Petitioner stated, "It's clear that in my Grand Jury testimony that I'm referring to a

1972 Pontiac Formula 400 and a 1970 Bronco, [instead of the 1979 Bronco]."  (*Id*. at

110, Doc. 63-3 at 111, Ex. 12.)

Fourth, as to Smithers' investigative file, Petitioner stated, "It would clearly

indicate that it was Thomas Smithers being investigated for these charges and it

would clearly indicate that the charges stem from his garage inspection records as

opposed to the Commonwealth's false testimony as to secret identification numbers

that they were fully aware of did not exist."  (*Id*. at 111, Doc. 63-3 at 112, Ex. 12.)

58

Fifth, as to Smithers' immunity agreement, Petitioner asserts, "I believe the jury and myself were entitled to know that Mr. Smithers cut a deal with the prosecutor to offer false testimony at trial." (*Id*., Doc. 63-3 at 112, Ex. 12)

Sixth, as to the title to the 1979 Bronco, Petitioner stated,

> Well, in the audiotapes it makes it clear that I am looking for this document and because the Commonwealth knew this was an important document, Smithers claimed that this document was burned up. He claimed that he took receipts and titles from the safe and burned them all up.

> So again, I was unable to get any evidence. I've never seen the title before, I knew nothing about a Mr. Davis whose name was supposedly on this title or any transfer and the Commonwealth was fully aware of the fact that I was trying to track this title down and they deliberately made sure I did not track it down.

(*Id*. at 112, Doc. 63-3 at 113, Ex. 12.)

Seventh, as to photographs and other evidence, namely receipts, Petitioner stated,

> Mr. Smithers' testimony, he clearly stated that he never named it the Happy Hooker Garage. The one picture with the Bronco in front of the garage also had a picture of the sign that said Happy Hooker right on the garage. They took great pains to show that this man didn't own the Happy Hooker Garage where, in fact, he did.

> The other picture is right in front of his house where you can see the address of the home, see the Bronco with the customized features Mr. Timko talked about and the one where he is pulling his boat out of the

lake is clearly, in my opinion, exculpatory when this man is sitting
behind the wheel pulling his boat out of the lake.

(*Id*. at 113-114, Doc. 63-3 at 114-15, Ex. 12.)

Eighth, as to the police report pertaining to the arson, Petitioner stated,

Smithers claimed he had a good friend at the Honesdale barracks
that told him his ass was in a sling.

* * *

In the audiotapes Thomas Smithers is reading highlights from the police
report and he clearly states that there were paint cans found at the scene
of this arson.

The Commonwealth, because I mentioned fiberglass cans during
our conversations, submitted fiberglass cans at the trial claiming they
were found at the arson and that they matched the fiberglass can that was
found at my residence.  None of this testimony was true and it's clear
from the audiotape transcripts that it is not true.

(*Id*. at 114-15, Doc. 63-3 at 115-16, Ex. 12.)

Lastly, as to the Pike County Audiotapes, Petitioner provided no testimony at

the PCRA hearing on his argument in favor of their being exculpatory.  In his brief

before this court, Petitioner argues the Pike County Audiotapes are exculpatory

because they reveal that Petitioner was talking to Smithers about a Ford Bronco that

he purchased from Brian Hawk, which was located behind the Happy Hooker Garage;

that Petitioner repeatedly told Smithers that the police kept saying he purchased the

(other) Bronco off a Mr. Davis when he did not, and thus was trying to find out from

Smithers where the title for the Bronco came from; and that Smithers claimed to have

burned all his records.[14]  (*See* Doc. 69 at 57.)  Further, Petitioner argues the

audiotapes are exculpatory because, without them, Petitioner had no rebuttal evidence

to present at his 2000 retrial in response to the Commonwealth's submitted evidence

pertaining to the arson of the 1979 Bronco.  (*Id*.)

### ii.    False Testimony

At the PCRA hearing, Petitioner testified that the Commonwealth presented

testimony and evidence at the 2000 retrial it knew to be false.  He claimed that police

officers falsely testified that they went to Petitioner's residence at Lake

Wallenpaupack, even though they knew he did not in fact live there.  (NT PCRA

7/9/2013 119, Doc. 63-3 at 120, Ex. 12.)  He also claimed that the Commonwealth

presented false testimony regarding: (1) Petitioner's continuous possession of the

1979 Bronco; (2) testimony regarding secret VIN numbers, and (3) testimony that

Bondo fiberglass cans were seized from the scene of the arson at the police barracks.

(*Id*. at 120-26, Doc. 63-3 at 121-27, Ex. 12.)

---

[14]  Petitioner makes argument pertaining to the 1977 Pontiac here, but since the court is only addressing claims regarding his 2000 retrial relating to the 1979 Bronco, the court need not consider the 1977 Pontiac arguments.

The Pennsylvania Superior Court determined that Petitioner failed to establish prejudice as required to prove a constitutional violation. Specifically, the court set forth law and Petitioner presented facts in support of his argument as follows:

> [Petitioner] also argues within this issue that the Commonwealth presented false testimony and failed to correct the same. "[T]he United States Supreme Court has held that a violation of the Fourteenth Amendment's due process clause occurs when a state obtains a criminal conviction through the knowing use of false evidence." *Commonwealth v. Henry*, 706 A.2d 313, 320 (Pa. 1997) (citation omitted). However, the Supreme Court has been clear that "[a] new trial is required if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . ." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (internal quotation marks and citation omitted).
>
> [Petitioner]'s argument presents some legal standards with citations to case law, followed by one paragraph consisting of one run-on sentence with several string citations to both the 1987 and 2000 trials. [Petitioner] highlights testimony that "officers went to [Petitioner]'s residence at Lake Wallenpaupack . . . which is incorrect because [Petitioner] resided in Pocono Summit." Appellant's Brief at 54. [Petitioner] also references without further explanation, "testimony that [Petitioner] was in continuous possession of the 1979 Ford Bronco[,] . . . testimony regarding secret VINs[,] . . . and testimony that Bondo fiberglass cans were seized from the scene of the arson[.]" *Id*. at 54-55. In [Petitioner]'s view, all of this was "contravened by Smithers's statements on the audiotapes . . . ." *Id*. at 55.

(Doc. 71-12 at 21-22, Ex. L.)  The court then concluded,

> At no point does [Petitioner] explain how any of the testimony, assuming *arguendo* that it was materially false, "in any reasonable likelihood [could] have affected the judgment of the jury[.]" *Giglio*,

*supra*.  As [Petitioner] does not argue how he was prejudiced in this regard, we conclude he is not entitled to relief.

(*Id.* at 22, Ex. L.)

### iii.    Analysis

The Pennsylvania Superior Court addressed both issues in this claim in its decision following the PCRA court's 2013 dismissal of the PCRA petition.  As to the *Brady* aspect of the claim, the Superior Court determined that, even if it were to address all nine (9) items on their merits, Petitioner failed to establish prejudice as required to prove a *Brady* violation.[15]  Specifically, the court held,

> Nevertheless, even if we were to address all nine of these items on their merits, they would all fail for the same reason.  Part of a *Brady* violation is a showing of prejudice, *i.e.*, "a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."  *Smith, supra* (citation omitted).  The Supreme Court has stated "[a] reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." *Id*. (internal quotation marks, some brackets, and citations omitted).  Although [Petitioner] argues prejudice in his brief for some of the items, he only alleges that the Commonwealth's conduct hampered his ability to cross-examine Smithers at his first trial in 1987.  Appellant's Brief at 52, 53.  Smithers never testified at [Petitioner]'s re-trial in 2000, which is the only trial

---

[15]  As there appears to be no question that the nine (9) items were suppressed by the Commonwealth, and the Commonwealth does not contest that such items may be exculpatory, the court will focus, as did the state court, on whether the evidence was material to the outcome of the case.

> that is the subject of this appeal.  As [Petitioner] has alleged no prejudice
> stemming from the actual re-trial from 2000, [Petitioner] is not entitled
> to relief on *Brady* or Rule 573 grounds.

(Doc. 71-12 at 20-21, Ex. L.)

Recognizing that only the evidence presented at the 2000 retrial is relevant to

Petitioner's claim here, the Superior Court found no prejudice, thereby finding that

the nine (9) suppressed items were not material to the outcome of the case.  By only

looking to the 2000 retrial, the court relied not only on the evidence presented at that

trial, but also on the fact that Smithers did *not* testify.[16]  More specifically, that

evidence of guilt presented at trial has been summarized by the Superior Court as

follows:[17]

> The charges stem from the theft of a 1979 Ford Bronco belonging
> to a George Timko.  The facts, as gleaned from the evidence at trial, are
> that on January 7, 1982, the Bronco was stolen from a laundromat
> parking lot while Mr. and Mrs. Timko were in the process of loading it
> with freshly cleaned clothes.  As Mr. Timko exited the premises, having
> retrieved their last basket of laundry, he saw that the Bronco was not
> where he had left it and was nowhere to be found.  He immediately

---

[16]  In light of the fact that Smithers did not testify at the 2000 retrial, and that the
statements made by Petitioner to Smithers in the Pike County Audiotapes were not admitted at the
retrial, the court fails to understand how Petitioner was prejudiced by Smithers' testimony or by his
own statements when he was purportedly not provided with the Pike County Audiotapes prior to the
2000 retrial.

[17]  In all subsequent opinions in this matter, the Superior Court acknowledges the factual
and procedural history set forth here.

reported the vehicle as stolen to the police.  Mr. Timko had purchased the vehicle in December, 1981, for $13,000.

As a result of a state police investigation, the vehicle was found at the residence of [Petitioner] in August, 1984.  [Petitioner] stated to the police that he had purchased the Bronco from Brian Hawk in May 1980 for $2991.  The Vehicle Identification Number (VIN) located on the firewall of the Bronco at the time of seizure had been affixed there by [Petitioner] in late 1982, after the original one had allegedly been damaged in an accident.  This replacement VIN plate was obtained pursuant to an application filed by [Petitioner] in which he stated that the vehicle in question was titled under certificate number A29783858.  The certificate of title for number A29783858 in the name of Charles H. Davis, Jr., had been earlier attached to [Petitioner]'s application for temporary registration card filed on October 20, 1982.  The vehicle being transferred in 1982 from Davis to [Petitioner] was described as a 1974 Ford SW with VIN 4T12Y156435.

The VIN on the Bronco's firewall did not match the hidden VIN located on the frame of its engine compartment, and it did match the VIN of a 1974 Ford Pinto station wagon.  During an interview with the police, [Petitioner] denied ever owning a 1974 Ford Pinto and denied knowing an individual named Charles Davis.

*Commonwealth v. Romansky*, No. 1922 EDA 2000 (Pa. Super. Ct. June 22, 2001)

(Doc. 71-3 at 1-3, Ex. C).

In light of the evidence of guilt relied upon by the state court, as well as the

fact that Smithers himself did not testify at the retrial, this court concludes that

Petitioner has not established that the nine (9) suppressed items were material and

would have changed the outcome of the trial.  *See Kyles*, 514 U.S. at 420 (the

defendant must show "the favorable evidence [withheld] could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict").  In evaluating the cumulative effect of the nine (9) items in light of the evidence of guilt found at trial, the state court's decision on these matters that Petitioner has not established materiality because there is no reasonable probability that the outcome of the trial would have been different, *see Strickler*, 527 U.S. at 281-82, is not contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(1)-(2).

Turning to the false testimony aspect of this claim, as set forth above, the Superior Court found as follows:

> At no point does [Petitioner] explain how any of the testimony, assuming *arguendo* that it was materially false, "in any reasonable likelihood [could] have affected the judgment of the jury[.]  *Giglio*, *supra*.  As [Petitioner] does not argue how he was prejudiced in this regard, we conclude he is not entitled to relief.

(Doc. 71-12 at 22, Ex. L.)

In his petition, Petitioner asks the court to look at the cumulative effect of the allegedly false testimony in light of the other *Brady* evidence set forth above.  (See Doc. 69 at 59) (citing *Kyles*, 514 U.S. at 436).  Notably, this court has already determined that Petitioner has not established that the nine (9) suppressed items were

66

material and would have changed the outcome of the trial.  (*See supra*, pp. 63-66.)

Considering now Petitioner's claims of false testimony in addition to those

suppressed items does not sway the court otherwise.  This court agrees with the state

court's finding that none of the allegedly false testimony had a reasonable likelihood

of affecting the judgment of the jury.  Again, considering the cumulative effect of all

this evidence, suppressed items as well as false testimony, the court finds that the

state court's decision on these matters that Petitioner has not established materiality

because there is no reasonable probability that the outcome of the trial would have

been different, *see Strickler*, 527 U.S. at 281-82, is not contrary to, or an unreasonable

application of, clearly established federal law, or an unreasonable determination of

the facts.  28 U.S.C. § 2254(d)(1)-(2).  Thus, Petitioner is not entitled to habeas relief

on this entire claim.

> **d.** **Claim IV: Petitioner was denied his right to due process when the state court refused to correct Petitioner's illegal sentence**

Petitioner contends that he was denied due process because the state court

refused to correct an allegedly illegal sentence relating to the conspiracy charge.  The

conspiracy charge was part of Petitioner's 1987 trial, but was not one of the three (3)

67

charges Petitioner faced in his 2000 retrial.[18]  Specifically, Petitioner was convicted

and sentenced on a charge of conspiracy to deal in vehicles with removed or falsified

identification numbers with respect to the 1977 Pontiac, but actually was charged

with conspiracy to receive stolen property.[19]

Petitioner did not raise this claim in his direct appeal from the 1987 trial, but

did raise it in his April 26, 2001 PCRA petition, his April 19, 2002 PCRA petition,

and his motion to vacate illegal sentence.  The PCRA court denied the claim in its

October 1, 2012 order denying Petitioner's motion to vacate illegal sentence.  (Doc.

71-8, Ex. H.)  At oral argument on Petitioner's motion, the Commonwealth made the

following statement with respect to the conspiracy charge:

---

[18]  The court has already determined that all claims related to the 1987 trial for the charges pertaining to the 1977 Pontiac are barred by the statute of limitations under 28 U.S.C. § 2244(d).  (*See supra*, pp. 18-23.)  For purposes of finality of decision, the court will consider the other arguments presented by the parties here, especially in light of the state courts' protracted determination of this issue over the many years of this state court litigation.

[19]  As the PCRA court recognized in its October 1, 2012 decision denying Petitioner's motion to vacate illegal sentence, the original criminal complaint before the County's District Justice indicated a charge of criminal conspiracy under 18 Pa. Cons. Stat. Ann. § 903, but was changed to a conspiracy to receive stolen property under 18 Pa. Cons. Stat. Ann. § 3925.  (*See* Doc. 71-8 at 2, Ex. H.)  However, after Petitioner's charges were held over for court, the Commonwealth filed a criminal information wherein Petitioner was charged with, *inter alia*, conspiracy to deal in vehicles with removed or falsified numbers and/or theft.  (*Id*.)  According to the PCRA court, this conspiracy charge was related only to the 1977 Pontiac, which is not the subject of Petitioner's 2000 retrial at issue in this federal habeas petition.  (*Id*.)

> I don't dispute the fact that the conspiracy charge was amended and I
> don't dispute the fact that Judge Thomson charged the jury on the wrong
> conspiracy charge.  We presume that jury's [*sic*] follow the instructions
> that's given, so I think that we can come to the conclusion that he was
> convicted of a crime that was not charged, so as I told Ms. Fischer, the
> Commonwealth does not oppose relief on her motion.

(Notes of Testimony, Oral Argument, Aug. 10, 2012, Doc. 63-4 at 105-06, Ex. 18.)

After hearing this statement by the Commonwealth, the PCRA court nevertheless

ruled that the alleged error on the conspiracy charge was not "obviously illegal."

(Doc. 71-8 at 8, Ex. H.)  Rather, "[t]he alleged error comprises the 'discrepancy'

between the entry from the [District Justice] and subsequent criminal information

[filed by the Commonwealth] regarding the charge of conspiracy."  (*Id*. at 9.)

The PCRA court further considered the claim in the context of Petitioner's

ineffective assistance of counsel claim in its October 8, 2013 order denying

Petitioner's PCRA petition.  (Doc. 71-9 at 14-15, Ex. I.)  Prior to addressing the

ineffectiveness claim, the PCRA court declared this underlying claim barred based on

the Superior Court's July 2010 decision dismissing all challenges to the 1987

conviction and limiting the PCRA to convictions arising from the 2000 retrial.  (*Id*. at

14.)  However, in that October 8, 2013 PCRA order, the PCRA court described the

background of this claim and found as follows:

69

Based upon a thorough review of [the presentment, the criminal complaint, the criminal information, and the jury instructions], the Court concluded that a patent error did not occur.  First, while the Criminal Complaint filed before the District Justice contained three (3) counts of Conspiracy, the District Justice reduced those three (3) counts to one (1) to cover all three (3) vehicles in question.  In addition, the original Complaint referred to the Conspiracy counts as violations of 18 Pa. C.S.A. § 903.  Further, the paperwork from the District Justice referred to the Conspiracy charge as "Conspiracy - Receiving" under 18 Pa. C.S.A. § 3925.

The matter was thereafter filed as a Criminal Information in which the Conspiracy charge was identified as "Conspiracy in Vehicles with Removed or Falsified Numbers and/or Theft."  Finally, this Conspiracy charge was ultimately identified to the Jury in the final instructions as being "Conspiracy to Deal in Vehicles with Removed or Falsified Numbers and/or Theft."  The Jury ultimately rendered a verdict of Guilty on the Conspiracy charge.

* * *

[T]he evolution or explanation of the Conspiracy charge as it existed in 1987 does not constitute a patent error by the Court.  Based upon the Coordinate Jurisdiction Rule and Law of the Case doctrine, this Court's authority to change a prior Order of a different but equal Judge is limited.  Based upon that, this Court is not inclined to conclude that the sentence imposed in this matter is illegal.

(*Id*. at 14-15.)

Petitioner appealed this denial to the Superior Court.  Rather than decide the claim on the merits, the Superior Court found it time-barred.  In doing so, the court first noted that this claim stems from Petitioner's 1987 convictions which were not

the subject of the 2000 retrial.  (Doc. 71-12 at 13, Ex. L.)  After reviewing the state

law pertaining to timeliness, the court observed that, in a previous ruling, it had

already explained that "any PCRA relief [Petitioner] seeks to assert pertaining to his

December 17, 1987 conviction is now time barred."  (*Id*. at 15.)  The court further

stated that, "[a]s the PCRA time-bar is jurisdictional in nature, it must nevertheless

apply even to a claim where the Commonwealth concedes error.  As all issues

regarding [Petitioner]'s remaining 1987 convictions and sentence are time-barred, and

[Petitioner] has not argued that any exception applies, we are constrained to conclude

that [Petitioner] is not entitled to relief on this issue."  (*Id*. at 15-16.)

Initially, the court notes that this claim is not timely, as the conspiracy

conviction from the 1987 trial was related to the 1977 Pontiac, which is not at issue in

this case.  (*See supra*, pp. 18-23.)  However, in his habeas petition, Petitioner posits

that, because the PCRA court addressed the claim on the merits in its October 1, 2012

decision denying his motion to vacate illegal sentence, the PCRA court (and later

courts considering Petitioner's 2002 PCRA petition) conceded timeliness.  While this

court does not necessarily accept Petitioner's argument that the PCRA court conceded

timeliness by addressing this claim on the merits in its October 1, 2012 decision, we

do note that, in its October 8, 2013 decision, the PCRA court initially determined this

71

issue to be barred as untimely, as found by the Superior Court, but then proceeded to also address the claim on its merits by referring to its October 1, 2012 decision. Nevertheless, to the extent Petitioner makes his argument regarding timeliness in the state courts, he is seemingly requesting that this court bypass the federal statute of limitations as well.  As set forth above, this court has already determined that, under the federal statute of limitations, claims related to the 1977 Pontiac raised in the 1987 trial are untimely.  *See* 28 U.S.C. § 2244(d).

In their brief in opposition, Respondents argue that this claim is procedurally defaulted because the Pennsylvania Superior Court resolved it on state procedural grounds, specifically that it was time-barred under state law, as the claim is based on his 1987 convictions and sentence.  In addition to making the exception to timeliness in the state courts set forth above, Petitioner also counters that, should the court find procedural default, any such default should be excused because failure to review the claim would result in a fundamental miscarriage of justice, as Petitioner was not charged with conspiracy to deal in vehicles with removed or falsified identification numbers, but was in fact convicted of that charge after the trial court mistakenly instructed the jury of it.  A fundamental miscarriage of justice may be found if the petitioner presents evidence of actual innocence of the underlying criminal charges.

72

*Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In such a case, justice demands that the federal court overlook the procedural default and entertain the claim.  *Harris v. Reed*, 489 U.S. 255, 260-64 (1989); *see also Coleman*, 501 U.S. at 750.

Here, Petitioner asserts that the Commonwealth's agreeing that Petitioner's conviction cannot be a legal cause of his imprisonment because he was not charged with conspiracy to deal in vehicles with removed or falsified identification numbers, for which he is serving an additional two (2) to four (4) years of incarceration, meets the miscarriage of justice standard.  Upon review, the court disagrees.  The miscarriage of justice exception is limited to truly extraordinary cases, where there is a showing of "actual innocence" by the petitioner.  *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000); *see also Schlup*, 513 U.S. at 327.  In this case, although the initial complaint charged Petitioner with conspiracy under 18 Pa. Cons. Stat. Ann. § 903, when the Commonwealth filed its criminal information, Petitioner was charged with conspiracy under 18 Pa. Cons. Stat. Ann. § 3925, as it related to the 1977 Pontiac.  It was the latter conspiracy statute that was charged to the jury by the trial court and which the jury found.  As such, Petitioner has failed to establish actual innocence as to that charge.  Refusing to consider the habeas petition could not result in a miscarriage of justice, and procedural default will not be excused.

73

Even if the court were to review this claim on the merits, the court concludes the claim would fail.  In its October 8, 2013 decision adopting its previous October 1, 2012 denial of Petitioner's motion to vacate illegal sentence, the PCRA court noted "it is virtually impossible to analyze the evolution of the charges given the passage of time [(more than twenty (20) years)] and the fact that no one involved in those proceedings is currently involved in this case.  However, the evolution or explanation of the Conspiracy charge as it existed in 1987 does not constitute a patent error by the Court."  (Doc. 71-9 at 15.)  This court will not second guess the state court's factual determination with respect to the "evolution" of the conspiracy charge, as Petitioner has not presented clear and convincing evidence to rebut the presumption.  *See* 28 U.S.C. § 2254(e)(1).  Habeas relief on this claim will be denied.

> **e.    Claim V: Petitioner was denied his constitutional right to effective assistance of counsel**

Petitioner claims that he was denied effective assistance of counsel when counsel from his 2000 retrial and appeal (1) failed to object to an illegal sentence, (2) failed to investigate in preparation for the retrial, (3) overrode Petitioner's desire to testify at the retrial, and (4) conceded Petitioner's guilt.  The court will set forth the standard for ineffective assistance of counsel claims before discussing each alleged violation.

To establish ineffectiveness claims, Petitioner first "must show counsel's performance was deficient," meaning "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Second, he must show "the deficient performance prejudiced the defense," meaning counsel's "errors were so serious as to deprive the defendant of a fair trial." *Id*.  To meet this prong, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  This is an objective inquiry. *Breakiron v. Horn*, 642 F.3d 126, 145 (3d Cir. 2011).  "Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."[20] *Strickland*, 466 U.S. at 687.

---

[20]   Pennsylvania applies the same test for ineffective assistance of counsel as the federal courts. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).  In Pennsylvania, the ineffective assistance of counsel standard requires the petitioner to "rebut the presumption of professional competence" by demonstrating: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interest; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Sneed*, 899 A.2d 1067, 1076 (Pa. 2006).  If the petitioner fails to satisfy any of the standard's prongs, the claim will be rejected. *Id*.

In addition, Petitioner's claims of ineffective assistance of appellate counsel must be examined under the same *Strickland* standards cited above: 1) whether counsel's performance was unreasonable; and 2) whether counsel's unreasonable performance actually prejudiced the defense.  *Strickland*, 466 U.S. at 687.  If a court finds no merit in a claim of ineffective assistance by trial counsel, appellate counsel cannot be found ineffective for failing to raise those same meritless issues on appeal. *See United States v. Cook*, 45 F.3d 388, 392-93 (10th Cir. 1995) ("When a defendant alleges his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, we examine the merits of the omitted issue.  If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel.") (citations and quotations omitted).

The Superior Court addressed each alleged instance of ineffective assistance in its July 22, 2014 decision on Petitioner's appeal from the denial of his PCRA petition. (Doc. 71-12, Ex. L .)  Thus, the court will consider the instances using AEDPA's deferential review.

### i.      Failure to Object to Illegal Sentence

As set forth in the claim above, in the 1987 trial Petitioner was convicted and sentenced on a charge of conspiracy to deal in vehicles with removed or falsified

identification numbers, but actually was charged with conspiracy to receive stolen property.  Here, Petitioner contends that trial counsel was ineffective for failing to object to the conviction and sentence on that charge.  As with the underlying claim, the Superior Court rejected the ineffectiveness claim as time-barred, also finding that Petitioner failed to allege and prove a time-bar exception.  (Doc. 71-12 at 24, Ex. L.)  However, the PCRA court addressed the merits of the underlying claim related to the illegal sentence and found the claim to be without merit.  (Doc. 71-9 at 14-15, Ex. I.)

This court has determined the underlying claim of Petitioner being convicted of an illegal sentence to be procedurally defaulted.  (*See supra*, pp. 72-73.)  Further, even if the court had reviewed the merits, we have determined the underlying claim warrants no relief.  (*See supra*, p. 74.)  As set forth in *Strickland*, when a petitioner claims that his counsel failed to raise a claim that the court determines to be meritless, habeas relief under *Strickland* is not available.  *See Strickland*, 466 U.S. at 691 (failure to pursue "fruitless" claims "may not be challenged as unreasonable.").  Having determined that the underlying claim is meritless, habeas relief on this instance of ineffective assistance of trial counsel will be denied.

### ii.      Failure to Investigate

Petitioner argues that trial counsel failed to investigate, more specifically that (1) trial counsel should have called various witnesses to testify, (2) counsel failed to obtain the Grand Jury Presentment No. 33 and the Pike County Audiotapes, and (3) counsel failed to introduce certain photographs.  The Superior Court addressed this entire claim in its review of the PCRA court's denial of post-conviction claims.  (Doc. 71-12, Ex. L.)  The court will address each issue separately.[21]

### a.      Failure to Call Witnesses

Petitioner argues that counsel was ineffective for failing to call various witnesses at his 2000 retrial.  Petitioner fails to identify any of these proposed witnesses in his habeas petition.  Upon review, the court finds Petitioner is not entitled to habeas relief on this claim.

The background of this claim is as follows.  At the 2000 retrial, the Commonwealth presented the testimony of one (1) lay witness (the victim of the theft of the 1979 Bronco) and four (4) state officials from either the Pennsylvania State

---

[21]  Petitioner makes an argument for counsel's overall unpreparedness resulting in ineffective assistance of counsel that he claims was not addressed by the state courts or Respondents in their response to the habeas petition.  (Doc. 76 at 19.)  The state courts clearly parsed through Petitioner's ineffectiveness arguments to decide on the issues presented herein.  They performed a thorough analysis of the facts relating to counsel's preparation for the 2000 retrial.  As such, this court will follow the state courts' course here and review the issues as they are set forth herein.

Police or the Office of Attorney General to form its case-in-chief against Petitioner. (*See* NT Trial 1/11/2000, Doc. 63-7, Ex. 28.)  Defense counsel Chelak presented no witnesses on behalf of Petitioner.

In Petitioner's amended PCRA petition filed in 2008, he asserted that Attorney Chelak failed to interview prospective witnesses, including April Kresge and Joanne Loadvinci, but provided no further information or argument.  (Doc. 63-1 at 86, Amend. PCRA Petition.)  At the PCRA hearing, Petitioner testified that he sent a letter to Attorney Chelak, dated November 26, 1999, requesting that Chelak interview as prospective witnesses Joanne Loadvinci, Thomas Smithers' girlfriend who was familiar with the 1979 Bronco; Charles Davis, the man whose name appeared on the Pinto title; Marilyn Latzo, the notary who allegedly did the title transfer between Petitioner and Mr. Davis; and April Kresge, a local woman who had information about the Bronco and Smithers.  (NT PCRA 7/9/2013 149-50; 158-59, Doc. 63-3 at 150-52; 159-60, Ex. 12.)  Of these witnesses, Petitioner testified that April Kresge was in the courtroom for his 2000 retrial, but did not testify.  (NT PCRA 7/9/2013 157, Doc. 63-3 at 159, Ex. 12.)  None of these witnesses were present for the PCRA hearing to testify on behalf of Petitioner.

Also at the 2013 PCRA proceedings, Attorney Chelak, now a Judge in the Court of Common Pleas for Pike County, testified.  He was presented with several letters from Petitioner requesting that he interview or subpoena the above-referenced witnesses, but could not recall if he did either before the 2000 retrial.  (Notes of Testimony, PCRA Hearing, 3/4/2013 32-34; 36-37; 40-41 ("NT PCRA NT 3/4/2013"), Doc. 63-2 at 33-35; 37-38; 41-42, Ex, 11.)  He could not recall if any witnesses were present at Petitioner's 2000 retrial to testify on his behalf.  (NT PCRA 3/4/2013 41, Doc. 63-2 at 42, Ex. 11.)  In addition, he stated that his trial strategy for Petitioner's 2000 retrial was to "challenge the Commonwealth's evidence and the burden of proof that the Commonwealth had at trial."  (*Id*. at 40, Doc. 63-2 at 41, Ex. 11.)

In his habeas petition, Petitioner takes issue with counsel's decision not to call any of the above-referenced witnesses he identified to counsel prior to trial. Petitioner presented this issue in PCRA proceedings and, after the PCRA court denied the claim, the Superior Court affirmed the denial, finding Petitioner failed to establish prejudice because he did not identify the proposed witnesses, or whether they were available and willing to testify.  (Doc. 71-12 at 25, Ex. L.)  In doing so, the court noted that

a PCRA petitioner has a heavy burden when alleging that counsel failed to call a certain witness at trial.

> [I]n the particular context of the alleged failure to call witnesses, counsel will not be deemed ineffective unless the PCRA petitioner demonstrates: (1) the witness existed; (2) the witness was available; (3) counsel knew of, or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony was so prejudicial to petitioner to have denied him or her a fair trial.

*Commonwealth v. Miner*, 44 A.3d 684, 687 (Pa. Super. 2012) (citation omitted).

(*Id*. at 24-25, Ex. L.)

Here, Petitioner does not contest the standard used by the state court in evaluating this claim.  To establish a claim of ineffectiveness for failure to call a witness, a defendant must establish that: (1) the witness existed; (2) the witness was available to testify; (3) counsel was informed of the existence of the witness or where counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for defendant at trial; and (5) the absence of the testimony prejudiced defendant so as to deny him a fair trial.  *See Commonwealth v. Ervin*, 766 A.2d 859, 865 (Pa. Super. Ct. 2000); *see also Commonwealth v. Priovolos*, 715 A.2d 420, 422 (1998).  Further, ineffective assistance of counsel for failure to call witnesses will not be found where a defendant fails to provide affidavits from alleged

81

witnesses indicating their availability and willingness to cooperate with the defense.

*Commonwealth v. Khalil*, 806 A.2d 415, 422 (Pa. Super. Ct. 2002).  In the context of

an ineffectiveness claim based upon a failure to call a witness, the habeas petition

"must make a specific, affirmative showing as to what the missing evidence would

have been, and prove that this witness's testimony would have produced a different

result."  *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) (citation omitted).

As to the proposed witnesses, as stated above, the Superior Court addressed the

merits of this issue.  In doing so, the court concluded that Petitioner failed to establish

that counsel was ineffective for failing to present these witnesses because he did not

show the witnesses were willing and able to cooperate and appear on his behalf.  In

the instant petition, Petitioner does not contest that this showing was not made before

the state court, nor does he provide any further information indicating any witness's

willingness to testify at trial.  As a result, the court finds the Superior Court's

resolution of this issue was not contrary to, or an unreasonable application of, clearly

established federal law.  28 U.S.C. § 2254(d)(1).  Based on the record, Petitioner has

failed to demonstrate that there is a reasonable probability that the outcome of the

trial would have been different if counsel had called the above-referenced witnesses.

Without a showing of a reasonable probability of a different outcome, Petitioner has

failed to establish ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 687, 694.  Further, to the extent that Petitioner is claiming that appellate counsel was ineffective for failing to properly raise this claim, the court finds no constitutional violation.  Thus, habeas relief on this claim will be denied.

### b.   Failure to Obtain Presentment No. 33 and Pike County Audiotapes

Petitioner also claims that counsel was ineffective for failing to obtain the Grand Jury Presentment No. 33 and Pike County Audiotapes.  Specifically, he argues that, had counsel discovered the Presentment, he would have filed a motion to dismiss the information filed against Petitioner because the Presentment only recommended certain charges against Petitioner.  He also argues that, had counsel obtained and reviewed the Pike County Audiotapes, he would have discovered that Petitioner's Ford Bronco was located behind the Happy Hooker Garage and was not the subject of a grand jury investigation or any arson.

Petitioner presented this claim on appeal in PCRA proceedings, and the Superior Court addressed it after the PCRA court denied the claim.  Specifically, the Superior Court acknowledged that it already concluded under Petitioner's *Brady* claim that Petitioner has not shown any prejudice from not having the Presentment or audiotapes turned over sooner.  (Doc. 71-12 at 25-26, Ex. L.)  As a result, the court

83

further concluded that Petitioner cannot likewise show prejudice under *Strickland*. (*Id.*)

Because this court has also determined the underlying *Brady* claims here with respect to Presentment No. 33 and the Pike County Audiotapes lack merit, (*see supra*, pp. 63-66), trial counsel cannot have been ineffective for failing to assert a meritless claim. As set forth in *Strickland*, when a petitioner claims that his counsel failed to raise a claim that the court determines to be meritless, habeas relief under *Strickland* is not available. *See Strickland*, 466 U.S. at 691 (failure to pursue "fruitless" claims "may not be challenged as unreasonable."). Thus, habeas relief on this instance of ineffective assistance of trial counsel will be denied.

### c.  Failure to Introduce Certain Photographs

Under this failure to investigate claim, Petitioner also argues that trial counsel for his 2000 retrial failed to introduce photographs that he contends would have demonstrated his innocence of the charges related to the 1979 Bronco. Petitioner suggests that, had counsel engaged in further investigation, he could have shown that Petitioner was never in possession of the stolen 1979 Bronco. Upon review, the court finds that Petitioner is not entitled to habeas relief on this claim.

The background of this claim is as follows.  At the March 4, 2013 PCRA hearing, Attorney Chelak testified that, prior to the 2000 retrial, he vaguely remembered Petitioner sending him a letter referring to photographs that could be used at trial.  (NT PCRA 3/4/2013 34-36, Doc. 63-2 at 35-37, Ex. 11.)  The photographs were described as follows: "one . . . is a photo of the Bronco in front of the Happy Hooker Garage, another is of the Bronco in Mr. Smithers's driveway and a third is of Mr. Smithers in the Bronco pulling his boat out of the lake."  (*Id*. at 35, Doc. 63-2 at 36, Ex. 11.)  Mr. Chelak could not recall making copies of these photographs or introducing them at trial, (*id*. at 36, Doc. 63-2 at 37, Ex. 11), but stated that, if the record shows he did not do so, then he had probably made the determination that they were not of value to the defense, (*id*. at 95; 105, Doc. 63-2 at 96; 106, Ex. 11).

As to evidence of Petitioner's possession of 1979 Bronco, the record reveals the following.  At the 2000 retrial, former PSP Trooper Francis Golden testified that he interviewed Petitioner on September 4, 1984 at the police barracks where the 1979 Bronco had been impounded.  (NT Trial 1/11/2000 71-72, Doc. 63-7 at 72-73, Ex. 28.)  After allowing him to inspect the 1979 Bronco, Petitioner told Trooper Golden that it was his vehicle and produced a receipt showing his purchase.  (*Id*. at 72-73,

Doc. 63-7 at 73-74, Ex. 28.)  Additionally, at his 1987 trial, Petitioner testified that he

purchased the 1979 Bronco from Thomas Smithers after seeing it at Smithers' garage.

(NT Trial 5/4/1987 183-89, Doc. 63-6 at 183-89, Ex. 27.)  He stated that both he and

Smithers used the 1979 Bronco to tow boats in and out of a nearby lake.  (NT Trial

5/4/1987 185, Doc. 63-6 at 185, Ex. 27.)

The Superior Court addressed this claim on the merits in its July 22, 2014

decision following the PCRA court's denial of relief.  Specifically, the Superior Court

found Petitioner had not established prejudice with respect to this claim based on the

following determination:

> [Petitioner] points to two photographs that counsel should have
> discovered.  One photograph "depicted Smithers with the Bronco in front
> of his garage and his house and pulling [his] boat, all of which showed
> that the Bronco was in Smithers's (and not [Petitioner]'s) possession[.]"
> Appellant's Brief at 61.  The second was "of a 1977 Pontiac Firebird sent
> to [Petitioner] from Pontiac, which made it clear that his vehicle could
> not possibly be the 1972 Pontiac Formula 400 that [Petitioner] testified
> about before the grand jury."  *Id*.  As to the photograph of the Pontiac,
> [Petitioner] does not explain how a photograph of a 1977 Pontiac would
> "undermine [our] confidence" in [Petitioner]'s conviction on charges
> stemming from a 1979 Bronco.  Regarding the photograph of Smithers
> with the Bronco, the Commonwealth presented testimony of Trooper
> Francis Golden that [Petitioner] told him in an interview that the Bronco
> actually belonged to him, and he has a receipt for the Bronco.  N.T.,
> 1/11/00, at 72-73.  Although it may be true that such a photograph, if it
> existed, may raise an inference that Smithers possessed the vehicle at one
> point in time, the jury would still be free to credit Trooper Golden's

testimony.  Based on these considerations, we conclude [Petitioner] is not entitled to relief on these grounds.

(Doc. 71-12 at 26, Ex. L.)

In addressing this habeas claim based on ineffective assistance of counsel, "[a] court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced."  *Rolan v. Vaughn*, 445 F.3d 671, 678 (3d Cir. 2006).  "The object of an ineffective assistance claim is not to grade counsel's performance.  If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.* Here, the Superior Court's decision on whether Petitioner established prejudice constitutes an adjudication on the merits and, therefore, AEDPA review applies.

As set forth above, the Superior Court made a factual determination with respect to the photographs showing that Smithers may have been in possession of the 1979 Bronco at some point, but that this fact did not prove Petitioner's innocence. The court noted, "[a]lthough it may be true that such a photograph, if it existed, may raise an inference that Smithers possessed the vehicle at one point in time, the jury would still be free to credit Trooper Golden's testimony." (Doc. 71-12 at 26, Ex. L.) The state court's basis for this finding that Petitioner has not established the prejudice

element cannot be found to be unreasonable based on the record.  Importantly, the test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence ," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. *See Rice v. Collins*, 546 U.S. 333, 338-39 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing' evidence.'") (quoting § 2254(e)(1)) (citing *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)).  Petitioner has simply not made a showing with clear and convincing evidence that the Superior Court's determination was unreasonable.  To the contrary, Petitioner declared himself the owner of the 1979 Bronco at issue in this case.  Based upon a review of the record, it cannot be said that Petitioner was prejudiced by counsel's failure to introduce these photographs at the 2000 retrial.  Thus, the state court's rejection of Petitioner's claim of ineffective assistance of counsel is not an unreasonable application of the Supreme Court precedent set forth in *Strickland*.  Habeas relief is not warranted based on this issue.

### iii.    Interfering with Petitioner's Right to Testify

Next, Petitioner claims that trial counsel for his 2000 retrial interfered with his right to testify at trial.  *See United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir.

88

1992) (where a defendant claims that his right to testify was violated by defense counsel, the claim is properly framed as a claim of ineffective assistance of counsel). Specifically, Petitioner claims that Attorney Chelak overrode his express desire to testify. Upon review, the court finds that Petitioner is not entitled to habeas relief on this claim.

Prior to the presentation of the Commonwealth's case, the trial court instructed the jury that Petitioner has no burden to prove a case; that he can testify on his own defense, but does not have to; and that if he chooses not to testify, the jury cannot hold it against him in any way because he did not do so. (NT Trial 1/11/2000 8, Doc. 63-7 at 9, Ex. 28.) During his opening statement, Attorney Chelak informed the jury that Petitioner had chosen not to testify, and reiterated that the burden of proof is on the Commonwealth and not Petitioner. (*Id*. at 17, Doc. 63-7 at 18, Ex. 28.)

At the July 9, 2013 PCRA hearing, Petitioner testified that he first expressed his desire to testify at the retrial to Attorney Chelak when they met on January 5, 2000. (NT PCRA 7/9/2013 152-53, Doc. 63-3 at 154-55, Ex. 12.) According to Petitioner, at that meeting, they "were discussing how this case was going to evolve and what was going to be trial strategy and what wasn't. He felt that the case was an easy win, because the Commonwealth couldn't meet its burden of proof in this case

and he didn't believe it was a good idea for me to take the stand and testify." (*Id*. at 153, Doc. 63-3 at 155, Ex. 12.)  He stated that Attorney Chelak thought if he took the stand, the Commonwealth would "tear me to pieces." (*Id*., Doc. 63-3 at 155, Ex. 12.)

Petitioner testified that he also expressed his desire to testify at the retrial to Attorney Chelak after the Commonwealth completed its case at trial. (*Id*. at 155, Doc. 63-3 at 157, Ex. 12.)  He stated,

> I wanted to testify again, but he wanted to play a game that he said he learned in college where I was to stand up and he was to put his hand on my shoulder and push me back down to make it clear to the jury that I intended to testify, but he didn't want me to testify, because he didn't feel it was necessary and he was going to point out that he felt that the Commonwealth just didn't make its burden of proof in the case.

(*Id*., Doc. 63-3 at 157, Ex. 12.)  Petitioner also stated that he wanted to testify at that point because the Commonwealth had presented "false testimony" with respect to his possession of the stolen 1979 Bronco. (*Id*. at 155-56, Doc. 63-3 at 157-58, Ex. 12.) However, importantly, Petitioner also acknowledged that he chose to follow the advice of Attorney Chelak to not testify at trial. (*Id*. at 213, Doc. 63-3 at 215, Ex. 12.)

For his part, at the March 4, 2013 PCRA hearing, Attorney Chelak testified that he could not specifically remember if Petitioner expressed his desire to testify at the retrial to him. (NT PCRA 3/4/2013 40, Doc. 63-2 at 41, Ex. 11.)  However, he did state that

> my practice would have been to discuss [testifying] with the client and it
> could have been my advice and then a mutual decision was made.  If the
> client really wanted to testify, my practice normally would have been to
> allow him to testify unless I felt that there was some - - nothing to be
> gained by it, but I don't remember specifically what happened here.

(*Id*. at 96, Doc. 63-2 at 97.)  When asked for his assessment of whether Petitioner

could have helped his case if he had testified, Attorney Chelak stated, "I can only go

back on the fact that he did not testify at trial, so that would lead me to conclude that

it was my opinion that it would not have helped his defense."  (*Id*. at 97, Doc. 63-2 at

98.)

Following the PCRA hearing, the PCRA court denied this claim.  On appeal,

the Superior Court affirmed the denial of PCRA relief, finding that the record

supported the following findings of the PCRA court:

> At the [e]videntiary [h]earing, [trial c]ounsel testified that it was
> his practice to reach a mutual decision with a defendant as to whether or
> not the defendant would testify at [t]rial. [Petitioner] also testified that
> [trial c]ounsel advised him not to testify and he took that advice and
> remained silent at trial.
>
> While [Petitioner] now claims that that advice was ineffective
> assistance of counsel, it is clear also from [Petitioner]'s testimony at the
> hearing that he was going to take the stand and contradict his former
> admissions and sworn testimony and therefore create the impression that
> [Petitioner] had committed perjury either in his [f]irst [t]rial or [s]econd
> [t]rial. [Trial c]ounsel's determination that that type of situation would
> be detrimental to his client was a proper decision and certainly did not
> constitute ineffective assistance of counsel.

91

(Doc. 71-12 at 28, Ex. L.)  The Superior Court also determined that counsel had a reasonable basis for advising Petitioner not to testify where Petitioner's proposed testimony at the 2000 retrial directly contradicted his testimony from the 1987 trial. (*Id*. at 28-29, Ex. L.)  Specifically, the Superior Court stated,

> At the PCRA hearing, trial counsel testified that he could not recall this trial, being from 13 years ago, but that his "practice normally would have been to allow [Petitioner] to testify unless [he] felt that there was . . . nothing to be gained by it . . . ." N.T., 3/4/13, at 96. [Petitioner] acknowledged that he chose to follow counsel's advice at the time regarding his decision not to testify. N.T., 7/9/13, at 213.  However, [Petitioner] wished to tell the jury on the witness stand that "neither the 1979 Bronco nor the title to the 1979 Ford Bronco was in his possession . . . as well as . . . that *his* 1970 Bronco was located behind Smithers' Happy Hooker Garage." [Petitioner]'s Brief at 68 (emphasis in original); *see also* N.T., 7/9/13, at 214. [Petitioner] acknowledged that when he testified at his 1987 trial that he bought a Bronco from Smithers, his testimony was false. *Id*. at 217-218.  In his 1987 trial, [Petitioner] testified that he did ask Smithers to buy the Bronco, to which Smithers agreed, and after an issue with a tax of some kind, Smithers signed the title over to him. N.T., 5/11/87, at 185-186.  Now, [Petitioner] claims that Smithers never agreed to sell any Bronco to him. N.T., 7/9/13, at 220.  Based on this alone, the Commonwealth would have been able to impeach [Petitioner]'s credibility with his prior sworn trial testimony. *See generally Commonwealth v. Henkel*, 938 A.2d 433, 442 (Pa. Super. 2007) (stating, "[t]he general rule is that a prior inconsistent statement of a declarant is admissible to impeach the declarant[ ]") (citation omitted); *accord Commonwealth v. Simmons*, 662 A.2d 621, 638 (Pa. 1995) (stating, "[i]t is axiomatic that when attempting to discredit a witness' testimony by means of a prior inconsistent statement, the statement must have been made or adopted by the witness whose credibility is being impeached[ ]; Pa.R.E. 613(a).  Based on these considerations, we

92

> conclude trial counsel had a reasonable basis for advising [Petitioner] not
> to take the stand.  As a result, [Petitioner] is not entitled to relief.

(Doc. 71-12 at 28-29, Ex. L.)

Upon review, the court finds that the state court's determination that counsel was not ineffective with respect to Petitioner testifying was not contrary to established Supreme Court precedent.  28 U.S.C. § 2254(d)(1).  Additionally, the state court did not unreasonably apply the ineffectiveness standard when it determined that counsel was not ineffective.  (*Id.*)

Petitioner's claim of ineffective assistance of counsel here comes down to a disagreement with his counsel's trial strategy.  It is not uncommon for trial counsel and a defendant to disagree as to whether the defendant should testify.  "The decision whether a criminal defendant should take the witness stand in his own trial unquestionably has tremendous strategic importance . . . .  If counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify."  *Teague*, 953 F.2d at 1533.  However, "if defense counsel refused to accept the defendant's decision to testify and would not call him to the stand, counsel would have acted unethically to prevent the defendant from exercising his fundamental constitutional right to testify."  *Id*. at 1534.  In such a situation, "defense counsel has not acted within the range of

competence demanded of attorneys in criminal cases and the defendant clearly has not received reasonably effective assistance of counsel." *Id.* (internal quotations and citations omitted).

The Superior Court's rejection of Petitioner's ineffectiveness claim here was not an unreasonable application of the *Strickland* standard. Trial counsel's performance is not constitutionally deficient where counsel advises his client of his right to testify, but also advises him that he should not exercise that right because it would be unwise. *Campbell v. Vaughn*, 209 F.3d 280 291 (3d Cir. 2000) (citing *Teague*, 953 F.2d at 1534-35). Given Petitioner's express statement that he was willing and ready to contradict himself on the stand, based simply on his own word with no evidence to support his revised testimony, there is no doubt that it would have been unwise for him to testify at the 2000 retrial. The state court found that, in light of such considerations, trial counsel had a reasonable basis for advising Petitioner not to take the stand. Petitioner has not rebutted this finding of fact by the state court. *See* 28 U.S.C. § 2254(e)(1) (state court findings of fact must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence). Moreover, this determination of the facts in light of the

94

evidence presented at the PCRA hearing is objectively reasonable.  Therefore,

Petitioner's ineffectiveness issue here does not warrant habeas relief.

### iv.    Counsel's Concession of Guilt

Finally, Petitioner claims that trial counsel was ineffective for conceding

Petitioner's guilt at the 2000 retrial.  He maintains that counsel's concession of his

guilt to the charges relating to possession of the stolen 1979 Bronco in the opening

and closing statements, as well as not objecting to certain Commonwealth witness

testimony, amounted to a guilty plea, as his counsel "helped the Commonwealth's

case more than he helped Petitioner's case."  (Doc. 69 at 74.)  Petitioner further

argues that this conduct of counsel was presumptively prejudicial, and as such, he is

relieved of proving the actual prejudice element of an ineffective assistance claim.

In support of his argument, he relies on *United States v. Cronic*, 466 U.S. 648

(1984).  In *Cronic*, a case decided the same day as *Strickland*, the Supreme Court

identified a narrow exception to the application of *Strickland*'s prejudice requirement.

Noting that there are "circumstances that are so likely to prejudice the accused that

the cost of litigating their effect in a particular case is unjustified," the Court

concluded that when such circumstances are present, "a presumption of prejudice is

appropriate without inquiry into the actual conduct of the trial."  466 U.S. at 658, 659

(citations omitted).  This presumption of prejudice is sometimes referred to as "*per se* ineffective assistance of counsel."  *See, e.g.*, *Thomas v. Horn*, 750 F.3d 105, 113 n.3 (3d Cir. 2009).  In *Davenport v. Diguglielmo*, the Third Circuit identified three situations in which courts should apply the *Cronic* presumed prejudice standard, as set forth by the Supreme Court,

> The first is when there is a "'complete denial of counsel'" at a critical stage in the trial proceedings.  *Bell* [*v. Cone*, 535 U.S. 685, 695-96 (2002)] (quoting *Cronic*, 466 U.S. at 659).  Second are situations in which a petitioner is represented by counsel at trial, but counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id*.  And third, situations at trial where counsel could not render competent assistance.  *Id*.

*Davenport v. Diguglielmo*, 215 F. App'x 175, 182 (3d Cir. 2007) (not precedential).

In the second situation, "*Bell* held if counsel only fails to challenge the prosecution's case at specific points, to further a reasonable trial strategy, and not in its entirety, then *Cronic* does not apply."  *Id*. (citing *Bell*, 535 U.S. at 697).

In their brief in opposition, Respondents concede that Petitioner's ineffective assistance of counsel issues were fairly presented to the state courts, but argue that this issue is procedurally defaulted.  The Superior Court did not decide this claim on the merits, but rather did so based on an asserted violation of state procedural rules. As set forth above, procedural default occurs "when an issue is properly asserted in

the state system but not addressed on the merits because of an independent and

adequate state procedural rule." *Rolan v. Coleman*, 680 F.3d 311, 317 (3d Cir. 2012).

Here, the procedural rule upon which the Superior Court determined that

Petitioner had waived this *per se* ineffectiveness claim is Pennsylvania Rule of

Appellate Procedure 1925(b).  (*See* Doc. 71-12 at 31-33.)  The Superior Court stated

the following and concluded:

> Pennsylvania Rule of Appellate Procedure 1925(b) by its text requires
> that statements "identify each ruling or error that the appellant intends to
> challenge with sufficient detail to identify all pertinent issues for the
> judge." Pa.R.A.P. 1925(b)(4)(ii).  The Rule also requires that "[e]ach
> error identified in the Statement will be deemed to include every
> subsidiary issue contained therein which was raised in the trial court . . .
> ." *Id*. at 1925(b)(4)(v).  Finally, any issues not raised in accordance with
> Rule 1925(b)(4) will be deemed waived.  *Id*. at 1925(b)(4)(vii).  Our
> Supreme Court has held that Rule 1925(b) is a bright-line rule.
>
>> Our jurisprudence is clear and well-settled, and firmly
>> established that: Rule 1925(b) sets out a simple bright-line
>> rule, which obligates an appellant to file and serve a Rule
>> 1925(b) statement, when so ordered; any issues not raised in
>> a Rule 1925(b) statement will be deemed waived; the courts
>> lack the authority to countenance deviations from the Rule's
>> terms; the Rule's provisions are not subject to *ad hoc*
>> exceptions or selective enforcement; appellants and their
>> counsel are responsible for complying with the Rule's
>> requirements; Rule 1925 violations may be raised by the
>> appellate court *sua sponte*, and the Rule applies
>> notwithstanding an appellee's request not to enforce it; and,
>> if Rule 1925 is not clear as to what is required of an
>> appellant, on-the-record actions taken by the appellant

aimed at compliance may satisfy the Rule.  We yet again
repeat the principle first stated in [*Commonwealth v.*] *Lord*,
[719 A.2d 306 (Pa. 1998)] that must be applied here: "[I]n
order to preserve their claims for appellate review,
[a]ppellants must comply whenever the trial court orders
them to file a Statement of Matters Complained of on
Appeal pursuant to Pa.R.A.P. 1925.  Any issues not raised
in a Pa.R.A.P. 1925(b) statement will be deemed waived."
[*Id.*] at 309.

*Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011) (footnote omitted).

In the case *sub judice*, [Petitioner]'s Rule 1925(b) statement raised
all of his ineffective assistance of counsel issues at paragraph five.
Therein, [Petitioner] raised the issues that "trial counsel was ineffective
in failing to investigate, overriding [Petitioner]'s expressed desire to
testify, and failing to object to [Petitioner]'s illegal conspiracy sentence."
[Petitioner]'s Rule 1925(b) Statement, 11/25/13, at ¶ 5. [Petitioner] did
not raise any issue regarding counsel's alleged "concession" of
[Petitioner]'s guilt.

This Court has previously deemed claims of ineffective assistance
of counsel waived where the "Rule 1925(b) statement nowhere
specifie[d] what the deficiencies [we]re for the purposes of . . . appeal.
[*Commonwealth v. Johnson*, 51 A.3d 237, 246 (Pa. Super. Ct. 2012)].  In
this case, [Petitioner] did not specify anything regarding trial counsel
conceding [Petitioner]'s guilt.  In its Rule 1925(a) opinion, the PCRA
court did not address this claim, as it was not aware that [Petitioner]
intended to raise it for appeal. *See Commonwealth v. Hansley*, 24 A.3d
410, 415 (Pa. Super. 2011) (stating "the Rule 1925(b) statement must be
'specific enough for the trial court to identify and address the issue [an
appellant] wishe[s] to raise on appeal[ ]'") (citation omitted), *appeal
denied*, 32 A.3d 1275 (Pa. 2011); *Commonwealth v. Reeves*, 907 A.2d 1,
2 (Pa. Super. 2006) (stating "[w]hen a court has to guess what issues an
appellant is appealing, that is not enough for meaningful review[ ]"),
*appeal denied*, 919 A.2d 956 (Pa. 2007).  Based on these considerations,

we deem [Petitioner]'s final issue on appeal waived for failure to raise it in his Rule 1925(b) statement.[6]

[6] We note that paragraph 5 does cite to *Cronic* once.  However, like we stated in *Johnson* regarding *Strickland* claims, a defendant must nevertheless inform the PCRA court as to what the specific deficiency was that required it to apply the *Cronic* presumptive prejudice standard.

(Doc. 71-12 at 31-33.)

Clearly, the Superior Court determined that Petitioner had waived this concession of guilt claim, as he failed to identify or detail it in his 1925(b) statement. (*See id*.)  Further, the Superior Court's finding of waiver under Rule 1925(b) has been found to be an adequate basis to invoke the procedural default doctrine.  *Buck v. Colleran*, 115 F. App'x 526, 527-28 (3d Cir. 2004) (not precedential); *Branthafer v. Glunt*, Civ. No. 3:14-CV-294, 2015 WL 5569128, at *14 (Pa. M.D. Sept. 22, 2015); *Sidberry v. Fisher*, Civ. A. No. 11-888, 2015 WL 3866276, at *16 (W.D. Pa. June 23, 2015) (listing cases) ("Waiver of a claim for failure to comply with the requirements of Pa. R.A.P. 1925(b) and identify all issues to be reviewed on appeal has been found to be an adequate and independent ground sufficient to invoke the procedural default doctrine.").  Thus, because the Superior Court refused to address this issue on the merits based upon an independent and adequate state procedural rule, the court finds this issue to be procedurally defaulted.

99

Having found this issue procedurally defaulted based on the Superior Court's judgment with respect to waiver, this court may only reach the merits of the claim if Petitioner shows cause for the default and resulting prejudice or that a fundamental miscarriage of justice will result if the court does not consider the merits. *Coleman*, 501 U.S. at 731.

Rather than argue either cause and prejudice or a miscarriage of justice, in his habeas petition Petitioner claims that the PCRA court did indeed review this claim on the merits in its October 8, 2013 decision denying PCRA relief.[22] (Doc. 71-9, Ex. I.) Upon review of that decision, the court agrees that a portion of his issue was in fact addressed by the PCRA court. Specifically, the PCRA court framed this issue and addressed it as follows:

> 6. Was defense counsel ineffective for admitting that the Defendant had the Bronco in his possession?
>
> This court notes initially that [Petitioner] had previously admitted to purchasing the Bronco in question from Thomas Smithers and had

---

[22] Petitioner also argues that the court should not apply the Superior Court's reasoning with respect to the *Cronic per se* ineffectiveness standard, claiming that while the Superior Court did identify *Cronic* as the case relevant to the presumption of prejudice, the court "clearly missed the mark" on the *Cronic* issue. He claims that, rather than assessing counsel's failure to oppose the prosecution throughout the proceedings as a whole, the Superior Court "assessed a specific point" of ineffectiveness, *i.e.* counsel's concession of guilt, thereby rendering *Cronic* inapplicable. In light of the court's decision to review this issue *de novo* in light of the factual determinations made by the PCRA court, this argument need not be considered.

provided in his testimony in the 1987 Trial very specific details regarding his use, possession and purchase of the vehicle.  However, at the Evidentiary Hearing in this matter [Petitioner] has now denied that he owned that vehicle or ever purchased it from Smithers.  This change in testimony clearly calls into question [Petitioner]'s credibility in this matter. [Petitioner]'s prior admissions to possession of the 1979 Ford Bronco in question clearly support Counsel's decision to acknowledge [Petitioner]'s possession of that vehicle in the 2000 Trial.

(Doc. 71-9 at 13, Ex. I.)

Because these factual determinations by the PCRA court clearly address the portion of Petitioner's claim that counsel was ineffective for conceding guilt during his opening and closing statements, the court will address this portion of the claim. As Petitioner makes no argument to excuse procedural default of the claim that counsel conceded guilt during Commonwealth witness testimony, the court will not address that argument, as it is procedurally defaulted.  Thus, the court will conduct a *de novo* review over the pure legal questions and mixed questions of law and fact in this issue, but will still presume that the PCRA court's factual determinations are correct unless rebutted by clear and convincing evidence.  *See Palmer*, 592 F.3d at 392; 28 U.S.C. § 2254(e)(1).

Petitioner bases his argument that he is entitled to the *Cronic* presumption of prejudice on the fact that counsel made statements in both his opening and closing to the jury that Petitioner was in possession of the stolen 1979 Bronco.  More

101

specifically, during his opening, Attorney Chelak stated, "We certainly believe that

the evidence will show that the 1979 Ford Bronco which was allegedly stolen from

Mr. Timko's possession that eventually was in the possession of Mr. Romansky.  You

will hear testimony regarding the statements Mr. Romansky allegedly made as to how

he got the Bronco."  (NT Trial 1/11/2000 17-18, Doc. 63-7 at 18-19, Ex. 28.)

Attorney Chelak also stated, "[T]he Commonwealth needs to prove something more

than possession of a vehicle, because if it was just possession we wouldn't be here

today because obviously Mr. Romansky had possession of the vehicle." (*Id*. at 21-22,

Doc. 63-7 at 22-23.)  During his closing argument, Attorney Chelak conceded that the

Commonwealth had shown that Petitioner "ended up in possession" of the 1979

Bronco. (*Id*. at 101; Doc. 63-7 at 102.)

These statements by counsel during the 2000 retrial correspond with what the

PCRA court determined was Petitioner's 1987 trial testimony as to "very specific

details regarding his use, possession and purchase of the [1979 Bronco]." (Doc. 71-9

at 13, Ex. I.)  At the 1987 trial, Petitioner testified that the first time he saw the 1979

Bronco was at Smithers' garage, and that Smithers told him it belonged to a friend.

(NT Trial 5/4/1987 184-85, Doc. 63-6 at 184-85, Ex. 27.)  According to Petitioner,

the owner was going through a divorce and did not want to sell the Bronco because

102

he did not want to give half of the proceeds to his wife. (*Id*. at 185, Doc. 63-6 at 185, Ex. 27.)  As a result, Smithers asked Petitioner if he could bring the Bronco to Lake Wallenpaupack, where it could be used to pull boats out of the water.  (*Id*., Doc. 63-6 at 185, Ex. 27.)  The Bronco remained there for a year and a half, and both Petitioner and Smithers used it to pull boats in and out of the lake.  (*Id*., Doc. 63-6 at 185, Ex. 27)  While at the lake, the Bronco's paint was damaged due to pine sap.  (*Id*., Doc. 63-6 at 185, Ex. 27.)  Petitioner stated that, prior to taking the Bronco back to Smithers' garage for painting, he asked Smithers if he could buy it.  (*Id*., Doc. 63-6 at 185, Ex. 27.)  Smithers agreed and "came up with a title for it."  (*Id*., Doc. 63-6 at 185, Ex. 27.)  During his testimony, Petitioner then described in detail the procedure they went through with the title agency for transfer of title.  (*Id*. at 185-86, Doc. 63-6 at 185-86, Ex. 27.)

Petitioner asserted that he paid Smithers $3,000 for the 1979 Bronco.  (*Id*. at 187, Doc. 63-6 at 187, Ex. 27.)  He also claimed that he had no reason to know at that time that the Bronco had been stolen.  (*Id*. at 188, Doc. 63-6 at 188, Ex. 27.)  When the police came to look at the Bronco, Petitioner freely admitted that it was his vehicle.  (*Id*. at 189, Doc. 63-9 at 189, Ex. 27.)  He also testified that he performed a significant amount of work on the Bronco prior to its being impounded.  (*Id*. at 190-

91, Doc. 63-6 at 190-91, Ex. 27.)  In addition, he placed a special number plate on the 1979 Bronco.  (*Id*. at 222, Doc. 63-6 at 222, Ex. 27.)

Also at the 1987 trial, Pennsylvania State Police Trooper Francis Golden testified that he confiscated the 1979 Bronco at Petitioner's home in Sterling, Pennsylvania, in 1984, and when he later interviewed Petitioner at police barracks and allowed him to inspect the Bronco, Petitioner admitted to owning the Bronco and purchasing it from a Brian Hawk in 1980 (before it was reported stolen in 1982).  (*Id*. at 47-48; 16, Doc. 63-6 at 46-47, Ex. 27.)

At the July 9, 2013 PCRA hearing, Petitioner gave an entirely different version of events surrounding the possession of the 1979 Bronco from that which was presented at the 1987 trial.  First, Petitioner asserted that the 1979 Bronco was not picked up at his residence.  (NT PCRA 7/9/2013 120, Doc. 63-3 at 121, Ex. 12.)  He also claimed that Trooper Golden's 1987 testimony was false, and instead Petitioner had told him that he purchased a 1970 Bronco from Brian Hawk, and not a 1979 Bronco.  (*Id*. at 122-23, Doc. 63-6 at 123-24, Ex. 12.)

Again, Petitioner claims here that he is entitled to a presumption of prejudice under *Cronic* for counsel's conduct during the 2000 retrial.  Upon review, the court finds that none of counsel's remarks from his opening and closing statements at the

104

2000 retrial lead the court to conclude that the *Cronic* presumption of prejudice

standard is applicable.  Admitting to Petitioner's possession of the 1979 Bronco in

light of Petitioner's 1987 trial testimony does not signal counsel's ineffectiveness.

More specifically, counsel's actions here do not fall into any of the three situations in

which the court should apply *Cronic*.  Petitioner suggests that counsel's

representation falls into the situation where he "entirely fail[ed] to subject the

prosecution's case to meaningful adversarial testing." *Bell*, 535 U.S. at 696 (citing

*Cronic*, 466 U.S. at 659).  However, where Petitioner's new version of events directly

contradicts the version he gave under oath at the 1987 trial, the court must agree with

the PCRA court's determination that such a contradiction not only calls into question

Petitioner's credibility in this matter, but also supports counsel's decision to

acknowledge Petitioner's possession of the 1979 Bronco in the 2000 retrial.

Petitioner has not rebutted that factual determination with any clear and convincing

evidence.  Thus, habeas relief on this claim will be denied.

> **f.**  **Claim VI: The Commonwealth recorded Petitioner's conversations after he invoked his right to counsel, in violation of the his due process rights under the Fourth Amendment**

In this claim, Petitioner argues that his due process rights under the Fourth

Amendment were violated when the Commonwealth conducted a "search and seizure

by stealth" when it surreptitiously recorded Petitioner's conversations with Smithers (the Pike County Audiotapes) after Petitioner had invoked his right to counsel. Upon review, the court finds this claim meritless.

The background of this claim is as follows. Prior to the grand jury proceedings, Petitioner was questioned by Trooper Horek on September 6, 1984, with counsel present.[23] (NT PCRA 7/9/2013 6, Doc. 63-3 at 7, Ex. 12.) Prior to that interview, Trooper Horek had participated in seizing the 1979 Bronco from Petitioner's residence on August 28, 1984. (NT Trial 1/11/2000 53-54, Doc. 63-7 at 54-55, Ex. 28.) Following grand jury proceedings, on August 27, 1985, Petitioner was arrested and charged with the offenses in connection with the 1979 Bronco, as well as two other vehicles. *See Commonwealth v. Romansky*, 702 A.2d at 1064. Following the arrest, recordings of Petitioner conversing with Smithers were made on December 19, 1985, January 14, 1986, and January 19, 1986. (Doc. 69 at 77.) Petitioner claims he was not aware of the content of these recordings until the Commonwealth provided the Pike County Audiotapes to him via court order in May 2005. However, the record reflects that, prior to the 2000 retrial, Attorney Chelak

---

[23] Petitioner testified at the July 9, 2013 PCRA hearing that he was questioned with counsel present on September 4, 1984, by Trooper Horek. (NT PCRA 7/9/2013 7, Doc. 63-3 at 8, Ex. 12.) At the 2000 retrial, Trooper Golden testified that he interviewed Petitioner at police barracks on September 4, 1984. (NT Trial 1/11/2000 71, Doc. 63-7 at 72, Ex. 28.)

filed a motion *in limine* seeking to limit the introduction of the Pike County Audiotapes at the retrial.  (*See* NT PCRA 3/4/2013 88-89, Doc. 63-2 at 121-22, Ex. 11.)  The Pike County court granted the motion and the audiotapes were excluded at trial.  It is these recordings, termed by Petitioner as "searches and seizures by stealth," that he now claims violated his due process rights under the Fourth Amendment.

Respondents contend that Petitioner failed to exhaust this claim because in state court his argument was limited to the claim of a violation of Pennsylvania's Wiretap Act.  They assert that he has engaged in a Fourth Amendment analysis for the first time in the present petition.  The court notes that, before the Superior Court, Petitioner raised this issue as follows, as set forth by the court in its July 22, 2014 memorandum denying relief: "[Petitioner] argues that the Commonwealth violated [Petitioner]'s rights under the Fourth Amendment as well as Pennsylvania's Wiretap Act by not checking to see if the other party to the interception consented, and by keeping a written log summarizing each interception."  (Doc. 71-12 at 10, Ex. L.) Although the Superior Court deemed the claim waived, it does appear that Petitioner presented it to the state courts and, thus, the court will not preclude a discussion of the issue here.

Respondents also argue that the claim is procedurally defaulted because the Superior Court deemed it waived for failure to, at a minimum, raise it in his direct appeal.[24]  (*Id*. at 12.)  In response, Petitioner seeks to excuse the procedural default on the basis that he was not provided with the Pike County Audiotapes until May 2005. (Doc. 69 at 38.)  Thereafter, Petitioner raised the claim in a motion for *nunc pro tunc* hearing on violation of Pennsylvania's Wiretap Act, filed in Pike County on September 16, 2013.  (*Id*.)  The PCRA court denied the claim in its October 8, 2013 denial of PCRA relief.  (*Id*.)  Petitioner appealed the denial to the Superior Court, and then filed a petition for allowance of appeal in the Pennsylvania Supreme Court.  (*Id*.) For purposes of disposition of this claim here, although the claim was deemed waived by the Superior Court, the court will excuse the procedural default on the basis of Petitioner's inability to secure the Pike County Audiotapes until May 2005.  Further, the court will conduct a *de novo* review over the pure legal questions and mixed questions of law and fact in this claim, but will still presume that the PCRA court's factual determinations are correct unless rebutted by clear and convincing evidence. *See Palmer*, 592 F.3d at 392; 28 U.S.C. § 2254(e)(1).

---

[24]  As with Claims I and II in this habeas petition, the Superior Court did note that the PCRA court rejected this issue on the merits, but explained that it may affirm the PCRA court "on any legal basis supported by the record."  (Doc. 71-12 at 12 n.2, Ex. L) (citing *Commonwealth v. Doty*, 48 A.3d 451, 456 (Pa. Super. Ct. 2012).)

As stated above, the PCRA court did address this issue on the merits.  In resolving this issue, the PCRA court made the following findings:

> a.    The wiretap conversations between Smithers and [Petitioner] were not introduced at Trial;
>
> b.    Smithers consented to the wiretap;
>
> c.    While [Petitioner] claims the Wiretap Act was violated, virtually no evidence has been presented in support of the claim that the Wiretap Act was not properly followed and further no evidence has been presented to indicate any of the [Petitioner]'s constitutional rights were violated by utilization of that wiretap information.

(Doc. 71-9 at 7-8, Ex. I.)  In addition, the PCRA court cited the Superior Court's July 2, 2010 Memorandum, which found that

> the evidence was clear that [Petitioner] was aware of the existence of these tapes certainly as early as the year 2000 and perhaps even earlier than that based upon reference to tapes in the 1986 charges from Wayne and Monroe County.  While Smithers testified in the 1987 trial as it related to the 1979 Ford Bronco, and that testimony resulted in the eventual reversal of the conviction, Smithers did not testify in the 2000 Trial.  Counsel for [Petitioner] filed a Motion In Limine prior to the 2000 Trial requesting that all tape recorded conversations be excluded from evidence at Trial.  That motion was granted.

(*Id*. at 8, Ex. I.)

109

After making such factual determinations, the PCRA concluded that Petitioner failed to establish that his federal and state constitutional rights were violated for failure to comply with Pennsylvania's Wiretap Act. (*Id*. at 9, Ex. I.)

To the extent that Petitioner asserts in this petition a violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5704, this claim is not cognizable. To prevail in his federal habeas corpus petition, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States," as opposed to a violation of state laws. 28 U.S.C. § 2254(a). Under § 2254, "a federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Because this assertion is based on purely state law, it is simply not cognizable in this court.

Turning to the Fourth Amendment claim, it is well-established that where one party to the conversation consents to the electronic monitoring, the conversation is admissible. *United States v. Mitlo*, 714 F.2d 294, 296 (3d Cir. 1983), *cert. denied*, 464 U.S. 1018 (1983). Therefore, the use of undercover agents and informers to elicit incriminating statements from potential criminal defendants does not constitute unreasonable search and seizure prohibited by the Fourth Amendment. *United States*

110

*v. White*, 401 U.S. 745, 750-51, *reh'g denied*, 402 U.S. 990 (1971); *Hoffa v. United States*, 385 U.S. 293, 302-03 (1966), *reh'g denied*, 386 U.S. 940 (1967).  As the Supreme Court has explained, the Fourth Amendment does not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa*, 385 U.S. at 302.  Likewise, the surreptitious concealment by an undercover agent of the transmitting and/or recording device to obtain conversations with the object of a criminal investigation does not convert the use of such conversations into a Fourth Amendment violation. *White*, 401 U.S. at 751-53; *Lopez v. United States*, 373 U.S. 427, 438-39 (1963).  In other words, "if a person consents to the presence at a meeting of another person who is willing to reveal what occurred, the Fourth Amendment permits the government to obtain and use the best available proof of what the latter person could have testified about." *U.S. v. Lee*, 359 F.3d 194, 200 (3d Cir. 2004).

In this case, Petitioner voluntarily agreed to meet and transact with Smithers, the informer.  Petitioner has not shown that Smithers, in turn, did not expressly consent to the recording of the conversations between himself and Petitioner. Furthermore, through the filing of a motion *in limine* prior to the 2000 retrial, Petitioner successfully precluded the introduction of the Pike County Audiotapes at

the retrial. *See Stone v. Powell*, 428 U.S. 465, 492 (1976) (holding "where the State has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial") (footnotes omitted); *Deputy v. Taylor*, 19 F.3d 1485, 1491 (3d Cir. 1994) ("Even otherwise potentially meritorious Fourth Amendment claims are barred on habeas [review] when the petitioner had a full and fair opportunity to litigate them."). Moreover, Smithers himself did not testify at the trial. As a result, the court finds no Fourth Amendment violation has occurred. Habeas relief on this claim will be denied.

> **g.    Claim VII: Petitioner was denied his compulsory and due process rights under the Sixth and Fourteenth Amendments when the Commonwealth withheld evidence and the trial court denied Petitioner's counsel's request for a continuance of trial**

In this claim, Petitioner argues that his Sixth and Fourteenth Amendment rights were violated because the Commonwealth withheld the grand jury documents and Pike County Audiotapes, and the trial court denied Petitioner's request for a continuance of the 2000 retrial. More specifically, Petitioner contends that, because his counsel was prevented from adequately preparing for trial due to the withholding

of this evidence and the denial of a continuance, the prejudice to him should be presumed under *United States v. Cronic*, 466 U.S. 648 (1984).  Upon review, the court finds habeas relief is not warranted under this claim.

The background of this claim is as follows.  As to the withholding of evidence, as set forth above, there is no debate that Petitioner was not provided with the grand jury documents, such as Presentment No.33, and the Pike County Audiotapes prior to the 2000 retrial.  As to a continuance, Petitioner's retrial was originally scheduled for July 1998.  (*See* NT PCRA 3/4/2013 27, Doc. 63-2 at 28, Ex. 11.)  On June 16, 1998, Attorney Chelak filed an application for a trial continuance, seeking the continuance "to provide defense counsel sufficient additional time to consult with his client, defense witnesses, and file any appropriate pre-trial motions."  (Doc. 63-8 at 44, Ex. 33.)  The trial court granted the continuance and rescheduled trial for the January 2000 term.  (*Id*. at 44, 45, Ex. 33.)  On December 20, 1999, Attorney Chelak filed a second motion for a continuance, seeking to continue the retrial to the March 2000 term due to Petitioner's recent transfers between state correctional institutions and his resultant difficulty in communicating with Petitioner.  (*Id*. at 45-47, Ex. 33.) Attorney Chelak also informed the court that the Commonwealth's attorney would not be available for the March 2000 trial term.  (*Id*.)  By order dated December 21,

113

1999, the trial court denied the motion, and the trial proceeded on January 11, 2000. (*Id*. at 48, Ex. 33.)  Petitioner now contends that, due to the trial court's denial of the second continuance, he and counsel were only able to have one thirty-five (35) minute meeting before the January 11, 2000 retrial.  However, during the PCRA hearing, Attorney Chelak testified about the numerous correspondence he had with Petitioner regarding the trial, including potential witnesses and evidence, between 1998 and 2000.  (NT PCRA 3/4/2013 30-38, Doc. 63-2 at 31-39, Ex. 11.)  He also stated that, between the denial of the second motion for a continuance and the 2000 retrial, he was able to adequately prepare for trial.  (*Id*. at 38, Doc. 63-2 at 39, Ex. 11.) He also was able to file pretrial motions as well as participate in a pretrial conference. (*Id*. 37-38; 86-87; 89-90, Doc. 63-2 at 38-39; 87-88; 90-91, Ex. 11.)

In response to this claim, Respondents first assert that Petitioner did not present his *Cronic* claim related to withheld evidence and/or based on the denial of a continuance in any state court.  Upon review of the record, the court agrees and, as such, the *Cronic* claim is unexhausted and now procedurally defaulted.  In the habeas petition and reply to Respondents' opposition, Petitioner makes no argument to excuse this procedural default.  Thus, the court will not excuse Petitioner's procedural default of this *Cronic* claim and it will be denied.

114

Even assuming Petitioner could show cause and prejudice or a miscarriage of justice to excuse his procedural default, the *Cronic* claim would still fail on its merits. As to the withholding of evidence, Petitioner claims that the withholding of the grand jury documents denied counsel the ability to ascertain whether the indictment was good or bad, based on true or false testimony; to challenge the indictment prior to trial; to ascertain whether the charges were proper; to learn what evidence was submitted to the grand jury, who testified before the grand jury and whether the evidence and testimony was admissible or not.  (Doc. 69 at 80.)  As to the withholding of the Pike County Audiotapes, Petitioner claims that such withholding denied counsel the ability to ascertain whether they were made pursuant to the law or in violation thereof, whether they would be admissible or not, and whether or not they would be of assistance in cross-examination or used to establish Petitioner's innocence.  (*Id.*)

As set forth previously, *Cronic* "recognized a narrow exception to *Strickland*'s holding that a defendant who asserts ineffective assistance of counsel must demonstrated not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense." *Florida v. Nixon*, 543 U.S. 175, 190 (2004) (discussing *Cronic*).  *Cronic* held that a Sixth Amendment violation may be found

"without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial," *Bell*, 535 U.S. at 695, when "circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," *Cronic*, 466 U.S. at 658. *Cronic*, not *Strickland*, applies "when . . . the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id*. at 659-60. *See also Wright v. Van Patten*, 552 U.S. 120, 124 (2008) (discussing *Cronic*).

As the court has found above, Petitioner has not shown any prejudice from not having the grand jury documents or Pike County Audiotapes turned over sooner. (*See supra*, pp. 63-66). The court also so finds here. Thus, Petitioner has failed to establish a *Cronic* claim with respect to the withholding of the grand jury documents and the Pike County Audiotapes.

Turning to Petitioner's claim relating to the trial continuance, as it was presented to the state courts and thereby exhausted, the court first notes that Petitioner raised this issue on direct appeal from the 2000 retrial as follows:

> Did the lower court commit reversible error of law by denying the Defendant's pre-trial motion for continuance in violation of both the Pennsylvania and federal constitutions?

(Doc. 71-2 at 7, Ex. B, Pet.'s Br.)  The trial court denied this claim, and the

Pennsylvania Superior Court considered it on the merits in Petitioner's appeal.

Before the Superior Court, Petitioner argued that, prior to trial, counsel needed

more time to confer with Petitioner and to attempt to locate Charles Davis, a potential

witness. (*See* Doc. 71-3 at 3, Ex. C.)  The Superior Court found the following:

> The decision to grant or to deny a continuance to secure a witness
> is a matter within the sound discretion of the trial court and will not be
> reversed by an appellate court absent prejudice or an abuse of discretion.
> *Com. v. Small*, 741 A.2d 666, 682 (Pa. 1999).  Vague unsupported
> assertions of defense counsel of efforts made to locate a witness provide
> no basis upon which to find an abuse of discretion in the denial of a
> continuance request.  *Id.*, at 683.  Here, [Petitioner] has been represented
> by instant counsel at least since 1987 when this court decided the prior
> direct appeal.  [Petitioner] has known of the alleged existence of Charles
> Davis since as early as September, 1984, when he denied knowing Davis
> pursuant to questioning by the police.  There appears no reason in the
> record to support a conclusion that counsel would have been able to
> locate within the two-month period between January and March, 2000, a
> witness who has not been found since 1984.  We conclude the lower
> court did not err in denying the motion for continuance since no
> prejudice to [Petitioner] or abuse of discretion has been demonstrated.

(*Id.* at 3-4, Ex. C.)

Continuance of trial is a matter of discretion with the trial court and will not be

disturbed unless a clear abuse of discretion has been shown.  *Fontana v. United*

*Bonding Ins. Co.*, 468 F.2d 168, 169-70 (3d Cir. 1972) (per curiam).  However, "a

myopic insistence upon expeditiousness in the face of a justifiable request for delay

can render the right to defend with counsel an empty formality." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Further, there is no mechanical test for evaluating a court's decision to deny a continuance; rather, such an evaluation "must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.*, 376 U.S. at 589-90; *United States v. Rankin*, 779 F.2d 956, 960 (3d Cir. 1986).

Neither party acknowledges that the question of whether a state trial court erred in denying a continuance is generally a state law concern. Nevertheless, Petitioner argues that, in this case, the trial court's denial elevated this question to one of constitutional deprivation because, as a result of the trial court's action, Petitioner was denied the opportunity to present a competent and reliable defense with effective counsel at his 2000 retrial. Consequently, his fundamental constitutional rights were violated. However, the court finds that the circumstances presented in this case do not satisfy such a showing.

First, it must be noted that, in fact, the trial court granted Attorney Chelak's first motion for a continuance, affording Petitioner and his counsel approximately an additional one and a half (1 ½) years to prepare for trial. At the time Attorney Chelak filed his second motion for a continuance, less than one (1) month prior to the

rescheduled trial, he indicated that he only recently had trouble communicating with his client due to transfers, and opposing counsel could not participate in the later requested trial date.  The Commonwealth and its witnesses otherwise were ready to proceed to trial on the previously scheduled date in January 2000.  In addition, Attorney Chelak asserted at the PCRA hearing that he was adequately prepared for the 2000 retrial, and had been able to perform duties such as the filing of pretrial motions and attend a pretrial conference before that trial.

In sum, in light of the circumstances surrounding defense counsel's preparation for trial and the Commonwealth's reasoning behind its opposition to counsel's motion for a continuance, the Court finds that the trial court did not abuse its discretion when it denied the motion for a continuance and, resultantly, Petitioner's related federal constitutional rights were not violated.  As a result, the Pennsylvania Superior Court's decision is not contrary to, or an unreasonable application of, clearly established law. 28 U.S.C. § 2254(d)(1).  Petitioner is not entitled to habeas relief on this claim.

## III.   <u>Conclusion</u>

For the foregoing reasons, the petition for writ of habeas corpus will be denied. Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of

Appeals for the Third Circuit, at the time a final order denying a petition under 28 U.S.C. § 2254, the district court must make a determination as to whether a certificate of appealability should issue.  3d Cir. L.A.R. 22.2.  A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To meet this burden a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000) (internal citations and quotations omitted).  In the present matter, the court concludes that reasonable jurists would not debate whether the court properly resolved the issues presented.  As such, a certificate of appealability will not issue.

An appropriate order will issue.

__s/Sylvia H. Rambo_____
SYLVIA H. RAMBO
United States District Judge

Dated: March 1, 2017.